[No. S046514. Dec. 22, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
CHANDA JOHN LOEUN, Defendant and Appellant.

**COUNSEL**

Lori Klein, under appointment by the Supreme Court, for Defendant and Appellant.

Francis J. Bardsley, Public Defender (San Diego), Greg Maizlish, Deputy Public Defender, and Stephen Gilbert as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Violet M. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KENNARD, J.**—In this case we revisit the Street Terrorism Enforcement and Prevention Act, also known as the STEP Act, which was recently before us in *People* v. *Gardeley* (1996) 14 Cal.4th 605 [59 Cal.Rptr.2d 356, 927 P.2d 713].

As we noted in *People* v. *Gardeley*, *supra*, 14 Cal.4th at page 615, the Legislature enacted the STEP Act in 1988 for the express purpose of eradicating criminal activity by street gangs. (Pen. Code, § 186.21; further undesignated statutory references are to the Penal Code.) Among the STEP Act's provisions is one imposing additional penalties for felony offenses committed "for the benefit of, at the direction of, or in association with any *criminal street gang*." (§ 186.22, subd. (b)(1), italics added.) The act defines "criminal street gang" as any ongoing association that consists of three or more persons, that has a common name or common identifying sign or symbol, that has as one of its "primary activities" the commission of certain specified criminal offenses, and that engages through its members in a "*pattern of criminal gang activity*." (*Id.*, subd. (f), italics added.) A gang engages in a "pattern of criminal gang activity" when its members participate in "two or more" specified criminal offenses (the so-called "predicate offenses") that are committed within a certain time frame and "on separate occasions, or by two or more persons." (*Id.*, subd. (e).)

We held in *People* v. *Gardeley*, *supra*, 14 Cal.4th at page 625, that the prosecution there had proven a "pattern of criminal gang activity" through

evidence pertaining to the charged offense and one other offense committed on a prior occasion by the defendant's fellow gang member. At issue here is whether the requisite "pattern" can also be established by evidence of the offense with which the defendant is charged and proof of another offense committed on the same occasion by a fellow gang member. We conclude this is permissible.

I

The prosecution charged defendant with assaulting Jose Ivan Corral with a deadly weapon (§ 245, subd. (a)(1)), and further alleged that defendant personally inflicted great bodily injury on the victim (§ 12022.7) and committed the crime for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). These are the relevant facts:

On May 27, 1993, Ariel Ramirez was working at a gasoline station in San Jose when three Cambodian males came in to buy cigarettes. Each one of the Cambodians had a blue bandanna hanging out of his back pants pocket; one of them stared at Ramirez and seemed to take particular note of a red shop rag (used to clean up oil spills) hanging from his pants pocket. They then left, but two of them returned a few minutes later accompanied by several other Asian males. The person who earlier had stared at Ramirez asked him, "What's up?" One of the others added, "Crip cuz. You got a problem?" The group then left and walked toward a nearby church and recreation center.

A short while later, Ramirez saw his cousin Ivan Corral driving by the station and hailed him over. With Corral were Ramirez's brother, two other cousins, and a friend. Ramirez described his encounter with the Asian males and said he thought they could be found in the adjacent churchyard. Leaving Ramirez at the gas station, Corral and the others approached the church on foot. Corral spotted a car with its trunk open and several Asian youths huddled around it, and he saw someone in the group take a wooden baseball bat out of the car trunk. Suddenly, about 15 members of the Asian group started running toward him. Defendant was part of this group and was wielding the baseball bat. A few of the others displayed knives, one carried a tire iron, and another had a pool cue. Corral and his 4 companions turned and ran back to the gasoline station pursued by as many as 40 or 50 Asian youths.

Corral picked up a metal pipe for protection but told his pursuers that he did not want any trouble. Defendant, the Asian group's apparent leader, responded: "Fuck that Norte shit." Corral understood the Spanish word "Norte" to be a reference to certain Hispanic street gangs from the northside of Los Angeles that proclaim their gang membership by wearing red clothing. Corral denied gang membership, saying, "I'm not in no click [sic]."

In an effort to avert violence, Corral put the metal pipe down and suggested to defendant that they "just talk it over." Defendant said, "No." One of defendant's companions uttered the word "Crip"; someone else asked, "You want to mess with Crips?"; and defendant added, "I'm a Cambodian Crip." This latter comment prompted Corral to pick up the metal pipe he had put down earlier. Defendant then said, "Fuck this shit," and moved forward. When Corral stepped back, he tripped over a bicycle. While Corral was on the ground, defendant hit him with the baseball bat, first in the head, and then on the shoulder and arm. Seconds later, another member of the Asian group, Chad Hen, struck Corral in the ribs with a tire iron.

Corral managed to break free from his assailants and ran to a convenience store. From there, he was taken by ambulance to a local hospital, where he was treated for head injuries and abrasions.

That same day, officers of the San Jose Police Department arrested defendant and Chad Hen in the churchyard. The chief investigating officer was Detective Patrick Boyd of the department's gang unit. He talked to Hen, who had hit Corral with the tire iron. Hen admitted being a member of "CWA," which stands for "Cambodians With Attitude." Detective Boyd also spoke with defendant,[1] who likewise admitted being a member of CWA and a "Crip"; defendant showed Boyd a tattoo on his arm spelling out the word "CRIPS." Other Asian youths at the scene identified themselves to Boyd as CWA members; some made a hand sign by cupping their hands with the thumb up and index finger curved to form the letter "C" to signify membership in a "Crip" gang.

At the time of trial, Detective Boyd was a 13-year veteran of the San Jose Police Department, and for the past year had been assigned to a special unit investigating crimes associated with criminal street gangs. As a result of his experience, Boyd was thoroughly familiar with the practices and memberships of the gangs active in the San Jose area. Boyd described CWA's primary activity as committing assaults with deadly weapons.[2] CWA is a "Crip" gang, whose members use blue clothing to indicate their gang

---

[1] Defendant talked to Detective Boyd after advisement and waiver of his constitutional rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436, 479 [86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

[2] Boyd described one such assault committed on November 24, 1992, by one Sam Ponlok, a member of "Tiny Rascals," which is a subset of the CWA gang. Although the prosecution introduced into evidence the information and abstract of judgment showing Ponlok's conviction for assault with a deadly weapon (§ 245, subd. (a)(1)), the trial court emphasized to the jury that the evidence of the Ponlok incident was being admitted only as a basis for Detective Boyd's opinion that committing assaults with deadly weapons was a primary activity of the CWA. Thus, we do not look to Ponlok's conviction as evidence of one of the "two or more" predicate offenses necessary to establish the requisite pattern of criminal gang activity.

affiliation. Their rivals, the "Blood" gangs, use red as their gang color. CWA's "turf" is the area in and around the churchyard near the gas station where the attack in this case took place. Boyd also explained that gangs commonly protect their turf by attacking those who come into the area sporting the color of a rival gang.

The jury convicted defendant of assault with a deadly weapon (§ 245, subd. (a)(1)), and found true the allegations that defendant had personally inflicted great bodily injury (§ 12022.7) and had committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The trial court sentenced defendant to state prison for eight years (a three-year term for the assault with a deadly weapon, a three-year enhancement for personally inflicting great bodily injury, and a two-year "street gang" enhancement).

On appeal, defendant challenged the sufficiency of evidence pertaining to the two-year "street gang" enhancement that the trial court imposed under section 186.22. Specifically, he contended that if the prosecution relies on the charged crime for one of the "two or more" predicate offenses statutorily required to establish the requisite "pattern of criminal gang activity," the prosecution must in addition present evidence of at least one *prior* offense of gang activity. Therefore, defendant argued, proof of the offense charged against him and another offense committed on the same occasion by a fellow gang member, as occurred here, was insufficient to establish the requisite "pattern." The Court of Appeal disagreed and affirmed the judgment in its entirety. We granted defendant's petition for review.

## II

At the time of the criminal events here, the STEP Act in subdivision (b)(1) of section 186.22 provided in relevant part: "[A]ny person who is convicted of a felony which is committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one, two, or three years at the court's discretion."[3] Therefore, a defendant is subject to these increased penalties only if the charged crime was "committed for the benefit of, at the direction of, or in association with any *criminal street gang*." (§ 186.22, subd. (b)(1), italics added.)

_____

[3]Because defendant's assault on Ivan Corral took place on May 27, 1993, we consider the version of the STEP Act then in effect. (Stats. 1991, ch. 661, § 2, pp. 3039-3040.) With regard to former section 186.22, subdivision (b)(1), quoted above, that version is in substance the same as the present law.

A "criminal street gang," as defined in former subdivision (f) of section 186.22, is "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated [in subdivision (e) of the statute, the so-called 'predicate offenses'], which has a common name or common identifying sign or symbol, whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." Thus, for a group to fall within the statutory definition of a "criminal street gang," these requirements must be met: (1) the group must be an ongoing association of three or more persons sharing a common name or common identifying sign or symbol; (2) one of the group's primary activities must be the commission of one of the specified predicate offenses; and (3) the group's members must "engage in or have engaged in a pattern of criminal gang activity." (Former § 186.22, subd. (f); see *People v. Gardeley, supra,* 14 Cal.4th 605, 616-617 [discussing the STEP Act's definition of a "criminal street gang"].) The third requirement is at issue here.

The term "pattern of criminal gang activity" is defined in former subdivision (e) of section 186.22 as "the commission, attempted commission, or solicitation of two or more of [the statutorily enumerated 'predicate offenses'], provided at least one of those offenses occurred after the effective date of this chapter [September 26, 1988] and the last of those offenses occurred within three years after a prior offense, and the offenses are committed on separate occasions, or by two or more persons."

Among the predicate offenses listed in former subdivision (e) of section 186.22 is the crime of which defendant was convicted in this case: "Assault with a deadly weapon or by means of force likely to produce great bodily injury, as defined in Section 245." (*Id.,* subd. (e)(1).) That crime was also committed by defendant's fellow CWA member, Chad Hen, who hit Ivan Corral with a tire iron. The Court of Appeal held that evidence of those two separate acts of assault with a deadly weapon committed by defendant and Hen on the same occasion was sufficient to satisfy the statutory requirement of "two or more" predicate offenses that make up the requisite "pattern of criminal gang activity." We agree.

## III

In construing the relevant provisions of the STEP Act, as with any statute, we strive to ascertain and effectuate the Legislature's intent. (*People v. Gardeley, supra,* 14 Cal.4th 605, 621; *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) "In undertaking this determination,

we are mindful of this court's limited role in the process of interpreting enactments from the political branches of our state government. In interpreting statutes, we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law, ' " 'whatever may be thought of the wisdom, expediency, or policy of the act.' " ' " (*California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) We give the words of the statute " 'their usual and ordinary meaning.' " (*Lennane* v. *Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976], quoting *DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) " 'Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.' [Citation.] Interpretations that lead to absurd results or render words surplusage are to be avoided. [Citation.]" (*Woods* v. *Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].) "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] 'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist." [Citation.]' " (*Lennane* v. *Franchise Tax Board, supra,* at p. 268.)

 Here, the pertinent language of former subdivision (e) of section 186.22 is clear and unambiguous. It states that a "pattern of criminal gang activity" is established by "the commission, attempted commission, or solicitation of two or more" statutorily enumerated offenses "committed on separate occasions, or by two or more persons." (*Ibid.*)

In *Gardeley,* we held that the prosecution had established the commission of the statutorily required "two or more" predicate offenses "on separate occasions, or by two or more persons" by proof of the defendant's commission of the charged offense and proof of the commission of "shooting at an inhabited dwelling" (§ 246) by a fellow gang member on an earlier occasion. (*People* v. *Gardeley, supra,* 14 Cal.4th at p. 625.) In *Gardeley,* not only were the predicate offenses committed on separate occasions, but they were also perpetrated by two different persons. The pertinent statutory language does not require proof, however, that the two or more predicate offenses must have been committed both on separate occasions and by different persons. Under the statute, the pattern of criminal gang activity can be established by proof of "two or more" predicate offenses committed "on separate occasions, *or* by two or more persons." (Former § 186.22, subd. (e), italics added.) The Legislature's use of the disjunctive "or" in the language just quoted indicates an intent to designate alternative ways of satisfying the statutory requirements. (*Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753,

763-764 [280 Cal.Rptr. 745, 809 P.2d 404]; *White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191].) This language allows the prosecution the choice of proving the requisite "pattern of criminal gang activity" by evidence of "two or more" predicate offenses committed "on separate occasions" *or* by evidence of such offenses committed "by two or more persons" on the same occasion.[4] Therefore, when the prosecution chooses to establish the requisite "pattern" by evidence of "two or more" predicate offenses committed on a single occasion by "two or more persons," it can, as here, rely on evidence of the defendant's commission of the charged offense and the contemporaneous commission of a second predicate offense by a fellow gang member.

Defendant contends that even if the crime charged can constitute one of the statutorily required "two or more" predicate offenses to establish the requisite "pattern of criminal gang activity," as we held in *People* v. *Gardeley, supra,* 14 Cal.4th 605, 625, the statutory requirement is met only if there has been at least one *prior* offense committed on a separate occasion. Otherwise, he argues, a defendant could not "know" that commission of the current offense would provide the second of the "two or more" predicate offenses necessary to establish a "pattern of criminal gang activity." Not so.

The requisite "pattern of criminal gang activity" is merely part of what the prosecution must prove to establish that the current crime is related to an ongoing "criminal street gang." (Former § 186.22, subd. (f).) Nothing in the statutory scheme suggests that the Legislature intended that the prosecution could prove this "pattern" only if it could show that a defendant had knowledge of prior crimes committed by fellow gang members.

Defendant's argument also founders on the language of the statute, which defines a "criminal street gang" as one "whose members individually or collectively *engage in* or have engaged in a pattern of criminal gang activity." (former § 186.22, subd. (f), italics added.) The Legislature's use of the present tense "engage in" indicates its intent that instances of current criminal conduct can satisfy the statutory requirement for a "pattern of

---

[4] Of course, proof of the "two or more" predicate offenses as specified by former subdivision (e) of section 186.22 need not consist of evidence that different Penal Code provisions were violated. Rather, the commission of two acts violating the same penal provision (for example, two robberies) would satisfy the statutory requirement of "two or more" predicate offenses so long as the robberies satisfied the further statutory requirement of having been committed "on separate occasions, or by two or more persons." (Former § 186.22, subd. (e) and (e)(2) [listing robbery as defined in section 211 et seq. as a qualifying predicate offense].) Otherwise, a gang that limited its criminal behavior to one type of criminal activity, such as committing robberies, "would not be subject to the [STEP Act] no matter how many times its members committed that crime." (*In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 1002 [279 Cal.Rptr. 236].)

criminal gang activity." ■ "[The legislative] use of a verb tense is significant in construing statutes." (*United States* v. *Wilson* (1992) 503 U.S. 329, 333 [112 S.Ct. 1351, 1354, 117 L.Ed.2d 593]; see also *Martin* v. *City of Albany* (1994) 320 Or. 175, 181 [880 P.2d 926, 929-930].) ■ Therefore, the prosecution can establish the requisite "pattern" exclusively through evidence of crimes committed contemporaneously with the charged incident.

■ We also reject defendant's contention that his proposed construction of the STEP Act (that the prosecution must prove one predicate offense predating the crime charged) is compelled by constitutional principles of freedom of association and due process. (U.S. Const., 1st & 14th Amends.) In support, defendant cites *Scales* v. *United States* (1961) 367 U.S. 203 [81 S.Ct. 1469, 6 L.Ed.2d 782], which holds that a statute criminalizing group membership runs afoul of these principles unless it includes a requirement that the defendant had *knowledge* of the group's illegal goals and entertained the *specific intent* to advance those goals. (*Scales, supra,* at pp. 228-230 [81 S.Ct. at pp. 1485-1487] [upholding a conviction under the federal Smith Act for knowing membership in an organization advocating the overthrow of the United States government by force or violence].)

The analogy that defendant draws between statutes that infringe on protected associational rights and California's STEP Act is inapt because the STEP Act does not criminalize group membership. As we explained in *People* v. *Gardeley, supra,* 14 Cal.4th 605, 623-624, the STEP Act punishes *conduct,* not association. Moreover, the STEP Act satisfies the requirements of due process by "impos[ing] increased criminal penalties only when the criminal conduct is felonious and committed not only 'for the benefit of, at the direction of, or in association with' a group that meets the specific statutory conditions of a 'criminal street gang,' but also with the 'specific intent to promote, further, or assist in any criminal conduct by gang members.' ([Former] § 186.22, subd. (b)(1).)" (*Gardeley, supra,* 14 Cal.4th at pp. 623-624.) We do not understand the due process clause to impose requirements of knowledge or specific intent beyond these, and defendant cites nothing to convince us otherwise.

■ Nor is there merit to defendant's suggestion that to apply our construction of the STEP Act in this case would violate ex post facto principles. Defendant relies on *People* v. *Davis* (1994) 7 Cal.4th 797, 811 [30 Cal.Rptr.2d 50, 872 P.2d 591], which states that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates in the same manner as an ex post facto law." In *Davis,* which involved the crime of fetal homicide under section 187, subdivision (a), we concluded that the statute

prohibited the killing of a nonviable fetus. (*People* v. *Davis, supra,* at p. 802.) But we declined to apply that holding to the defendant, who during a robbery had shot a pregnant woman, causing the miscarriage of her not-yet-viable fetus. As we pointed out, previous appellate decisions had uniformly held that a conviction for fetal homicide required proof of fetal viability. (*Id.* at p. 811.) Therefore, in *Davis,* ex post facto principles precluded the imposition of criminal liability for conduct that at the time was not considered criminal, namely, causing the pregnant victim to miscarry. No similar ex post facto problem exists with respect to the "pattern of criminal gang activity" requirement of the STEP Act that defendant challenges here. Unlike the situation in *Davis,* there was no uniform appellate rule interpreting the pertinent statutory language contrary to our holding here when defendant committed the assault with a deadly weapon on Ivan Corral.

■ Just before oral argument, defendant filed a supplemental brief pointing out the Legislature's recent enactment of two coordinated bills that, effective January 1, 1997, repealed the "sunset" date of the STEP Act and added language to section 186.22, subdivision (e) (Stats. 1996, ch. 873, § 1; Stats. 1996, ch. 982, § 1). As amended, subdivision (e) of section 186.22 now reads: "As used in this chapter, 'pattern of criminal gang activity' means the commission of, attempted commission of, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons." (Stats. 1996, ch. 982, § 1; underlining indicates changes effective January 1, 1997.) Before this amendment (and at the time of defendant's conviction in this case), the last phrase of former section 186.22, subdivision (e) stated: "and the offenses *are* committed on separate occasions, or by two or more persons." (Italics added.)

Defendant contends that the replacement of the word "are" in the version of the STEP Act under which defendant was sentenced with the word "were" in the current version shows that the Legislature must have intended all along that the statutorily required "two or more" predicate offenses to establish the requisite "pattern of criminal gang activity" be offenses committed *before* the charged crime. He also argues that notwithstanding the intent of the Legislature when it enacted the version of the STEP Act under which defendant was sentenced, he should gain the benefit of the recent STEP Act amendment, which, according to defendant, will bar prosecutors in cases subject to the present law from relying on current offenses to prove a pattern of criminal gang activity. Defendant likens this situation to a legislative reduction of sentence, which under *In re Estrada* (1965) 63 Cal.2d

740, 748 [48 Cal.Rptr. 172, 408 P.2d 948], would have to be applied retroactively to his case. We are not persuaded.

The verb tense change from "are" to "were" in subdivision (e) of section 186.22 was part of a legislative package that was promoted by the California District Attorneys Association and other law enforcement organizations but opposed by the criminal defense bar. The history of the legislation, provided by defendant, discusses the need to eliminate the "sunset" provision and to clarify that "sustained juvenile petitions" can be used to prove the requisite "pattern of criminal gang activity"; but, as defendant concedes, it makes no mention of the verb tense change from "are" to "were" in the last phrase of section 186.22, subdivision (e). It may be that this change simply conformed the verb tense in the final phrase of subdivision (e) ("the offenses were committed") with the verb tense already used in the previous two phrases ("these offenses occurred"; "those offenses occurred") and that it has no broader meaning. But it is also possible that the change in verb tense was made inadvertently.

Support for this latter view lies in the summaries of Assembly Bill No. 2035 (1995-1996 Reg. Sess.) prepared for the legislative committees; some of these correctly point out that the then current law used the word "are" in the last phrase of subdivision (e) of section 186.22, while others misquote then current law as already using the word "were." (Compare the summary prepared for the Senate Committee on Criminal Procedure, hearing date July 2, 1996, that describes "existing law" as stating "the offenses *are* committed on separate occasions, or by two or more persons," with the summaries prepared for the Assembly Committee on Public Safety, hearing date April 16, 1996, and the Assembly Committee on Appropriations, hearing date May 22, 1996, both describing "existing law" as stating "offenses *were* committed on separate occasions, or by two or more persons." [Italics added.].) The confusion in the legislative committees' summaries regarding which verb tense was used in the prior version of subdivision (e) suggests that the "change" in verb tense enacted into law by Assembly Bill No. 2035 may have been nothing more than a typographical error. Nothing in the muddled legislative history pertaining to the change from "are" to "were" lends any support to defendant's contention that this verb tense change indicates an intent by the Legislature to increase the prosecutorial burden by limiting the criminal acts that the prosecution may use to establish the requisite "pattern of criminal gang activity."[5]

---

[5]We do not decide defendant's contention, raised in his reply brief, that because he was sentenced to a three-year enhancement for personally inflicting great bodily injury, imposition of the two-year "street gang" enhancement violates section 654, which prohibits punishment

## IV

Through evidence of defendant's commission of the charged crime of assault with a deadly weapon on Ivan Corral and the separate assault on Corral seconds later by a fellow gang member, the prosecution established the requisite "pattern of criminal gang activity" to show that the gang on whose behalf defendant committed the assault meets the statutory definition of a "criminal street gang."

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Mosk, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

Appellant's petition for a rehearing was denied January 21, 1998.

---

under different penal provisions for the same act or omission. Questions regarding the propriety of defendant's sentence fall outside our grant of review, which was limited to "issues concerning what evidence will suffice to prove the existence of a criminal street gang."