Sterling FELLOWS, aka Sterling Ashley Fellows, aka Deuce, Petitioner,

v.

D. DEXTER (Warden), Respondent.

Case No. EDCV 07–0979–JSL (RC).

United States District Court, C.D. California.

April 28, 2008.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

### REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable J. Spencer Letts, Senior United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

### BACKGROUND

#### I

On December 17, 2004, in Riverside County Superior Court case no. RIF094979, a jury convicted petitioner Sterling Fellows, aka Sterling Ashley Fellows, aka Deuce, aka Slam Deuce, of one count of willful, deliberate and premeditated attempted murder in violation of California Penal Code ("P.C.") §§ 664/187 (count 1) and one count of assault with force likely to produce great bodily injury in violation of P.C. § 245(a)(1) (count 2), and, as to both counts, the jury found petitioner personally inflicted great bodily injury within the meaning of P.C. §§ 12022.7(a) and 1192.7(c)(8) and commit-

Sterling Fellows, Blythe, CA, pro se.

Jeffrey J. Koch, CAAG Office of Attorney General of California, San Diego, CA, for Respondent.

### ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

J. SPENCER LETTS, Senior District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

ted the offenses for the benefit of, at the direction of, and in association with a criminal street gang with specific intent to promote, further and assist in criminal conduct by gang members within the meaning of P.C. § 186.22(b); however, the jury found petitioner not guilty of wilfully and unlawfully participating in a criminal street gang in violation of P.C. § 186.22(a) (count 3). Clerk's Transcript ("CT") 65–66, 227–34, 244–45. On April 8, 2005, the petitioner was sentenced to 18 years to life in state prison. CT 278–82.

The petitioner appealed his convictions and sentence to the California Court of Appeal, CT 283–84, which affirmed the judgment in an unpublished opinion filed September 25, 2006, 2006 WL 2724028, but remanded the matter for resentencing of petitioner to life in prison with parole, with 15 years as the minimum term for parole. Lodgment nos. 5–8. On October 30, 2006, petitioner, proceeding through counsel, filed a petition for review in the California Supreme Court, which denied the petition on January 17, 2007. Lodgment nos. 9–10.

## II

The California Court of Appeal, in affirming petitioner's convictions and sentence, made the following findings of fact underlying the offenses:[1] Crystal Hunter (Crystal) and Dusty Dorsten (Dusty) met petitioner and his friend, Shorty, when petitioner's and Shorty's car broke down. Petitioner introduced himself as "Slam Deuce." Petitioner and Shorty asked if they could use the phone in Crystal's apartment. While inside the apartment, petitioner and Shorty wrote the following on the wall: "Them Niggas, Shorty & Slam Deuce." They also told Crystal and Dusty that they were from the Four Corner Hustler Crips.

Two weeks later, on December 5, 2000, Crystal had a small gathering at her apart-ment, and petitioner and Shorty came uninvited. Crystal was not feeling well and was resting in her room. Shorty kept going in her room and bothering her. Although Dusty told Shorty to leave Crystal alone, he ignored her and kept going in Crystal's room. Crystal's boyfriend, Jason Sawyer, arrived, and Dusty apprised him of the situation. Jason asked petitioner and Shorty to leave but they refused. They asked Jason to step outside on to the balcony. He complied, and Shorty and Jason started fighting. Jason, being bigger in size, was winning the fight, so Shorty tried to throw him off the balcony. Petitioner then stepped in to help Shorty get Jason over the rail. Jason fell over the rail and hit the ground. He was dazed for a minute, but then jumped up. Petitioner, Shorty, and Crystal ran down the stairs, and the fighting continued. Crystal tried to break up the fight, but petitioner and Shorty started hitting her. Jason broke off the fight out of concern for Crystal, and he and Crystal started walking away. The fight appeared to be over, but then petitioner approached Jason from behind and hit him on the side of the head. Jason was knocked unconscious and fell to the ground. Petitioner and Shorty started kicking him in the head. Petitioner then jumped on Jason's head with both feet, as if he were jumping on a trampoline. As he was jumping, he repeatedly yelled, "We put him to sleep. We put everybody to sleep. Four Corner Hustler Crips, we put them to sleep." Shorty continued kicking Jason on the sides of his head, as petitioner was jumping. Petitioner jumped on Jason's head for at least 10 minutes, and jumped up and down approximately 25 to 30 times. Petitioner and Shorty fled when they heard sirens approaching. Jason's face was unrecognizable. There was blood coming out of his mouth and nose, and he

---

1. Lodgment no. 8 at 3–5.

was making a gurgling sound. The police found Jason lying in a fetal position, with his head in a pool of blood. He had a deep cut over his left eye, and the left side of his face and his nose were very swollen.

At trial, Dr. Munik Salek, Jason's treating physician, testified that Jason had a collapsed lung and facial fractures. If Jason wasn't medically treated, he could have died from the collapsed lung.

In addition, Officer Jesus Orona, a gang expert, testified that Four Corner Hustler Crips was a criminal street gang and that petitioner had admitted membership in the gang. He testified that petitioner's gang moniker was Slam Deuce. He opined that, based on the gang graffiti that petitioner wrote on Crystal's wall and the statements petitioner made while jumping on Jason's head, petitioner committed this offense for the benefit of the gang.

### III

On August 3, 2007, petitioner, proceeding pro se, filed the pending petition for writ of habeas corpus under 28 U.S.C. § 2254. On October 17, 2007, respondent filed his answer, and on January 22, 2008, petitioner filed his reply.

The petitioner raises the following claims:

Ground One—"In violation of petitioner['s] Sixth and Fourteenth Amendments; [sic] the evidence was insufficient to sustain the premiditation [sic] conviction"; (Petition at 18–28) and

Ground Two—"In violation of petitiners [sic] Sixth and Fourteenth Amendments; [sic] the evidence is insufficient to sustain the gang enhancement conviction." Petition at 29–35.

### DISCUSSION

### IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circum-scribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The California Supreme Court reached the merits of petitioner's claims when it denied his petition for review without comment or citation to authority. *Gaston v. Palmer,* 417 F.3d 1030, 1038 (9th Cir.2005), *amended by,* 447 F.3d 1165 (9th Cir.2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 979, 166 L.Ed.2d 742 (U.S.2007); *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir.1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). However, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunne-*

*maker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Medley v. Runnels,* 506 F.3d 857, 862 (9th Cir.2007) (en banc), *cert. denied,* —— U.S. ——, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Thus, in addressing petitioner's claims, this Court will consider the reasoned opinion of the California Court of Appeal, which denied the claims on their merits. *Byrd v. Lewis,* 510 F.3d 1045, 1048 n. 4 (9th Cir. 2007); *Parle v. Runnels,* 505 F.3d 922, 926 (9th Cir.2007).

# V

■ To review the sufficiency of the evidence in a habeas corpus proceeding, the Court must determine whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Lewis v. Jeffers,* 497 U.S. 764, 781, 110 S.Ct. 3092, 3102–03, 111 L.Ed.2d 606 (1990) (citation omitted); *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). All evidence must be considered in the light most favorable to the prosecution, *Lewis,* 497 U.S. at 782, 110 S.Ct. at 3103; *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, and if the facts support conflicting inferences, reviewing courts "must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793; *Bruce v. Terhune,* 376 F.3d 950, 957 (9th Cir.2004) (per curiam); *Turner v. Calderon,* 281 F.3d 851, 882 (9th Cir.2002). Furthermore, under the AEDPA, federal courts must "apply the standards of *Jackson* with an additional layer of deference." *Juan H. v. Allen,* 408 F.3d 1262, 1274 (9th Cir.2005), *cert. denied,* 546 U.S. 1137, 126 S.Ct. 1142, 1145, 163 L.Ed.2d 1000 (2006). These standards are applied to the substantive elements of the criminal offenses under state law. *Jackson,* 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16; *Chein v.*

*Shumsky,* 373 F.3d 978, 983 (9th Cir.) (en banc), *cert. denied,* 543 U.S. 956, 125 S.Ct. 415, 160 L.Ed.2d 318 (2004).

### a. Attempted Murder:

■ " 'Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' " *People v. Lee,* 31 Cal.4th 613, 623, 3 Cal.Rptr.3d 402, 410, 74 P.3d 176 (2003), *cert. denied sub nom., Xiong v. California,* 541 U.S. 947, 124 S.Ct. 1680, 158 L.Ed.2d 374 (2004); *People v. Smith,* 37 Cal.4th 733, 739, 37 Cal.Rptr.3d 163, 167, 124 P.3d 730 (2005) (citation and internal quotation marks omitted). " 'There is rarely direct evidence of a defendant's intent. Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions.' " *Smith,* 37 Cal.4th at 741, 37 Cal.Rptr.3d at 169, 124 P.3d 730 (citation omitted); *see also People v. Ramos,* 121 Cal.App.4th 1194, 1207–08, 18 Cal.Rptr.3d 167 (2004) ("Generally, the question whether the defendant harbored the required intent must be inferred from the circumstances of the shooting."). Although motive is not an element of attempted murder, it can be evidence of an intent to kill. *Smith,* 37 Cal.4th at 735, 37 Cal.Rptr.3d at 168–69, 124 P.3d 730.

■ Furthermore, "the crime of attempted murder is not divided into degrees." *Smith,* 37 Cal.4th at 740, 37 Cal. Rptr.3d at 168, 124 P.3d 730; *People v. Bright,* 12 Cal.4th 652, 665–69, 49 Cal. Rptr.2d 732, 740–42, 909 P.2d 1354 (1996), *cert. denied,* 518 U.S. 1006, 116 S.Ct. 2527, 135 L.Ed.2d 1051 (1996), *overruled on other grounds, People v. Seel,* 34 Cal.4th 535, 21 Cal.Rptr.3d 179, 100 P.3d 870 (2004). Rather, "[t]he prosecutor may seek a jury finding that an attempted murder was 'willful, deliberate, and premeditated' for purposes of sentence enhancement."

*Smith,* 37 Cal.4th at 740, 37 Cal.Rptr.3d at 168, 124 P.3d 730; *Bright,* 12 Cal.4th at 669, 49 Cal.Rptr.2d at 742, 909 P.2d 1354; P.C. §§ 189,[2] 664(a).[3] Premeditation and deliberation require more than an intent to kill. *People v. Young,* 34 Cal.4th 1149, 1182, 24 Cal.Rptr.3d 112, 135, 105 P.3d 487 (2005), *cert. denied,* 546 U.S. 833, 126 S.Ct. 57, 163 L.Ed.2d 86 (2005); *People v. Cole,* 33 Cal.4th 1158, 1224, 17 Cal.Rptr.3d 532, 587, 95 P.3d 811 (2004), *cert. denied,* 544 U.S. 1001, 125 S.Ct. 1931, 161 L.Ed.2d 775 (2005). Rather, "premeditation and deliberation must result from careful thought and weighing of considerations." *People v. Manriquez,* 37 Cal.4th 547, 577, 36 Cal. Rptr.3d 340, 366, 123 P.3d 614 (2005) (citation and internal quotation marks omitted), *cert. denied,* 547 U.S. 1179, 126 S.Ct. 2359, 165 L.Ed.2d 280 (2006); *People v. Koontz,* 27 Cal.4th 1041, 1080, 119 Cal.Rptr.2d 859, 890, 46 P.3d 335 (2002), *cert. denied,* 537 U.S. 1117, 123 S.Ct. 881, 154 L.Ed.2d 794 (2003). Yet, "[t]he process of premeditation and deliberation does not require any extended period of time. The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly...." *Manriquez,* 37 Cal.4th at 577, 36 Cal.Rptr.3d at 366, 123 P.3d 614 (citations and internal quotation marks omitted); *People v. Lenart,* 32 Cal.4th 1107, 1127, 12 Cal.Rptr.3d 592, 607, 88 P.3d 498 (2004).

The California Supreme Court has identified three types of evidence indicative of premeditation and deliberation:

"(1) facts about how and what defendant did prior to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's prior relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed' [citation]; (3) facts about the nature of the killing from which the jury could infer that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2)."

*Lenart,* 32 Cal.4th at 1127, 12 Cal.Rptr.3d at 606–07, 88 P.3d 498 (quoting *People v. Anderson,* 70 Cal.2d 15, 26–27, 73 Cal. Rptr. 550, 447 P.2d 942 (1968)); *Young,* 34 Cal.4th at 1182–83, 24 Cal.Rptr.3d at 135, 105 P.3d 487. However, "[t]he categories of evidence identified in *Anderson,* ... do not represent an exhaustive list of evi-

**2.** Penal Code Section 189 provides that "[t]o prove the killing was "deliberate and premeditated," it shall not be necessary to prove the defendant maturely and meaningfully reflected upon the gravity of his or her act." P.C. § 189.

**3.** Penal Code Section 664(a) provides, in pertinent part:

If the crime attempted is punishable by imprisonment in the state prison, the per-

son guilty of the attempt shall be punished by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense attempted. However, if the crime attempted is willful, deliberate, and premeditated murder, as defined in [P.C.] Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole.
P.C. § 664(a).

dence that could sustain a finding of premeditation and deliberation, and the reviewing court need not accord them any particular weight." *Young,* 34 Cal.4th at 1183, 24 Cal.Rptr.3d at 136, 105 P.3d 487; *Manriquez,* 37 Cal.4th at 577, 36 Cal. Rptr.3d at 366, 123 P.3d 614.

 In Ground One, petitioner claims there was insufficient evidence to convict him of attempted first degree murder because his actions came about in the heat of the moment and were not the result of deliberation and planning. There is no merit to petitioner's claim.

The California Court of Appeal rejected petitioner's sufficiency of evidence claim, holding:

> Pursuant to the first *Anderson* factor, the evidence of planning was clear. Although the fight started between Shorty and Jason, [petitioner] intervened when Shorty was losing the fight. [Petitioner] had time to consider what he wanted to do, and he decided to help Shorty throw Jason over a balcony rail. After Jason hit the ground, he jumped back up, so [petitioner] and Shorty ran down the stairs to continue the fight. Jason broke off the fight and tried to walk away, but [petitioner] initiated the fight again by punching Jason from behind and jumping on his head. At that point, [petitioner] had clearly decided that he wanted to beat Jason to death. His plan of beating Jason to death was evidenced by his surprise punch from behind and subsequent jumping on Jason's head, as well as by the number of times he jumped on Jason's head, and his simultaneous chants of "We put him to sleep. We put everybody to sleep. Four Corner Hustler Crips, we put them to sleep." Officer Orona testified that the phrase "we put them to sleep" meant that the gang kills people. [¶] As to the second *Anderson* factor, motivation, the evidence showed that [petitioner] and Jason were at odds. Jason told [petitioner] to leave the party, and [petitioner] refused. [Petitioner] then saw Jason beating his friend Shorty in a fight. [Petitioner] quickly developed animosity toward Jason and stepped in to fight him too. Furthermore, as a gang member, [petitioner] was motivated to commit this crime in order to promote the reputation of his gang and instill fear and intimidation of his gang into the people in that area. [¶] Finally, the third *Anderson* factor, the manner of killing, was very strong evidence of deliberation and premeditation. The evidence described actions on [petitioner's] part that were cold and calculated. [Petitioner] threw Jason over a second story[FN2] balcony rail, and subsequently punched Jason in the head from behind, when Jason was completely vulnerable. Once [petitioner] knocked Jason to the ground, he and Shorty both started kicking him in the head. [Petitioner] then jumped on Jason's head with both feet, as if he were jumping on a trampoline, approximately 25 to 30 times. He jumped on Jason's head for at least 10 minutes, until Jason's face was bloody and unrecognizable. Rather than showing that [petitioner] acted on impulse, as he claims, the evidence showed that [petitioner] acted in a cruel and calculated manner that demonstrated a plan to kill Jason. [¶] Viewing the evidence in a light most favorable to the prosecution, as we must, we conclude that there was more than enough evidence of premeditation and deliberation.

> [FN2] The record does not clearly indicate on which floor Crystal's apartment was located. The record does establish that [petitioner] and Shorty ran down the stairs to see Jason after he fell over the rail, which indicates

that the apartment was at least on the second floor.

Lodgment no. 8 at 6–8 (citations omitted).

Petitioner does not dispute the California Court of Appeal's factual findings regarding the manner in which the altercation occurred, and these findings provide substantial evidence to support petitioner's attempted murder conviction. As the California Court of Appeal found, petitioner intervened in the fight between his friend and fellow gang member Shorty and Jason when it became clear Shorty was losing the fight. Reporter's Transcript ("RT") 36:16–37:11. Petitioner then helped Shorty throw Jason off the balcony after Shorty was unable to do so by himself. RT 37:7–38:8, 66:10–16. Petitioner and Shorty then ran downstairs and continued the fight, with petitioner and Shorty attacking Crystal when she tried to stop the fight. RT 38:9–39:5, 66:17–67:13. Moreover, after Jason broke off the fight to protect Crystal, and Jason and Crystal began to walk away, petitioner sucker punched Jason in the head, knocking Jason unconscious. RT 39:6–25, 67:6–68:7. Petitioner and Shorty then repeatedly kicked Jason in the head, with petitioner jumping on Jason's head "like a trampoline" approximately 25 or 30 times for at least 10 minutes, and petitioner and Shorty fled only when they heard sirens approaching. RT 39:26–42:26, 68:8–69:28. During that time, petitioner repeatedly yelled, "We put him to sleep. We put everybody to sleep. Four Corner Hustler Crips, we put them to sleep." RT 40:16–25, 68:17–18, 69:1–7, 96:10–25. Putting people to sleep means to kill them. RT 198:22–199:16. Petitioner and Shorty severely injured Jason, who suffered facial fractures and a collapsed lung, among other injuries. RT 113:7–19, 123:26–124:10, 127:5–131:22.

As the California Court of Appeal found, planning is demonstrated by the fact that after the fight was apparently over and Jason was walking away, petitioner sucker punched Jason from behind, knocking him unconscious, and then began to viciously and repeatedly jump on Jason's head while shouting out that he was going to put Jason "to sleep," i.e., kill him. *See People v. San Nicolas,* 34 Cal.4th 614, 658, 21 Cal.Rptr.3d 612, 648, 101 P.3d 509 (2004) ("The act of planning—involving premeditation and deliberation—requires nothing more than a 'successive thought[ ] of the mind.' " (citation omitted)), *cert. denied,* 546 U.S. 829, 126 S.Ct. 46, 163 L.Ed.2d 79 (2005).

Petitioner's motivations are clear. First, petitioner and Jason were involved in a dispute because Jason asked petitioner and Shorty to leave, and they refused and challenged Jason to a fight. *See People v. Jackson,* 49 Cal.3d 1170, 1200, 264 Cal.Rptr. 852, 868, 783 P.2d 211 (1989) ("[T]he law does not require that a first degree murderer have a rational motive for killing. Anger at the way the victim talked to him … may be sufficient." (citation and internal quotation marks omitted)), *cert. denied,* 498 U.S. 881, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990); *People v. Miranda,* 44 Cal.3d 57, 87, 241 Cal.Rptr. 594, 612, 744 P.2d 1127 (1987) (motive shown when defendant believed victims were being rude to defendant), *cert. denied,* 486 U.S. 1038, 108 S.Ct. 2026, 100 L.Ed.2d 613 (1988), *overruled in part on other grounds, People v. Marshall,* 50 Cal.3d 907, 269 Cal.Rptr. 269, 790 P.2d 676 (1990).[4] Moreover, as Deputy Sheriff Oro-

---

4. California courts "do not distinguish between attempted murder and completed first degree murder for purposes of determining whether there is sufficient evidence of premeditation and deliberation." *People v. Herrera,* 70 Cal.App.4th 1456, 1462–63, 83 Cal. Rptr.2d 307 (1999). Therefore, the Court relies on both murder and attempted murder cases in assessing whether there was sufficient evidence of premeditation and deliberation to support petitioner's attempted murder conviction.

na testified, gang members are expected to help each other in a fight, and retaliate against anyone who beats a gang member in a fight. RT 196:26–197:21. Further, as a gang member, petitioner's actions served to promote his gang's reputation and intimidate the apartment's residents. *Ramos,* 121 Cal.App.4th at 1208, 18 Cal. Rptr.3d 167.

Finally, and most importantly, the manner in which the attempted murder occurred strongly supports the jury's findings of premeditation and deliberation. After throwing Jason over a balcony, petitioner sucker punched him in the head from behind, knocking him unconscious, and then repeatedly kicked and stomped on Jason's head for at least 10 minutes, all the while yelling how he was going to kill (put to sleep) Jason. Such cold, calculated actions demonstrate premeditation and deliberation. *See Davis v. Woodford,* 384 F.3d 628, 640–41 (9th Cir.2004) (strangling victim for three to five minutes demonstrates premeditation and deliberation), *cert. dismissed,* 545 U.S. 1165, 126 S.Ct. 410, 162 L.Ed.2d 933 (2005); *People v. Cook,* 39 Cal.4th 566, 603–04, 47 Cal. Rptr.3d 22, 54–55, 139 P.3d 492 (2006) (finding substantial evidence of premeditation and deliberation when defendant beat victim, was persuaded to leave, but shortly thereafter stated "I should have killed the mother" and returned and beat the victim with a stick, causing extensive head and facial injuries), *cert. denied,* —— U.S. ——, 127 S.Ct. 2438, 167 L.Ed.2d 1139 (2007); *People v. Stitely,* 35 Cal.4th 514, 544, 26 Cal.Rptr.3d 1, 25, 108 P.3d 182 (2005) (applying lethal pressure to victim's neck for long periods of time "suggests defendant had ample opportunity to consider the deadly consequences of his actions" and demonstrates premeditation and deliberation), *cert. denied,* 546 U.S. 865, 126 S.Ct. 164, 163 L.Ed.2d 151 (2005). Indeed, this evidence alone is sufficient to support the jury's verdict. *See Davis,* 384 F.3d at 640 ("Under California law, 'when manner-of-killing evidence strongly suggests premeditation and deliberation, that evidence is enough, by itself, to sustain a conviction for first-degree murder.' "); *Drayden v. White,* 232 F.3d 704, 709 (9th Cir.2000) (same), *cert. denied,* 532 U.S. 984, 121 S.Ct. 1630, 149 L.Ed.2d 491 (2001).

### b. Gang Allegation:

▆▆ In Ground Two, petitioner challenges the sufficiency of the evidence for the gang enhancement under P.C. § 186.22(b)(1).[5] Once again, there is no merit to petitioner's claim.

The California Street Terrorism Enforcement and Prevention Act ("STEP Act"), P.C. §§ 186.20, et seq., is a statutory scheme enacted to further the "eradication of criminal activity by street gangs." P.C. § 186.21 (2004). A "criminal street gang" is defined in P.C. § 186.22(f) as:

---

**5.** Penal Code § 186.22(b)(1) provides:

any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows:

(A) Except as provided in subparagraphs (B) and (C), the person shall be punished by an additional term of two, three, or four years at the court's discretion.

(B) If the felony is a serious felony, as defined in subdivision (c) of Section 1192.7, the person shall be punished by an additional term of five years.

(C) If the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years.

P.C. § 186.22(b)(1) (2004). Attempted murder is a violent felony. P.C. § 667.5(c)(12).

any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, of subdivision (e),[6] having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.[7]

P.C. § 186.22(f) (2004) (footnotes added); *People v. Gardeley,* 14 Cal.4th 605, 616, 59 Cal.Rptr.2d 356, 363, 927 P.2d 713 (1997), *cert. denied,* 522 U.S. 854, 118 S.Ct. 148, 139 L.Ed.2d 94 (1997).

The statute sets forth two essential elements to prove a gang enhancement: First, the felony must be "committed for the benefit of, at the direction of, or in association with any criminal street gang" and, second, the felony must be committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members." P.C. § 186.22(b)(1) (2004); *Garcia v. Carey,* 395 F.3d 1099, 1102–03 (9th Cir.2005); *see also People v. Morales,* 112 Cal.App.4th 1176, 1198, 5 Cal.Rptr.3d 615, 632 (2003) ("[S]pecific intent to *benefit* the gang is not required. What is required is the 'specific intent to promote, further, or assist in any criminal conduct by gang members....'" (emphasis in original)). "[T]o prove the elements of the criminal street gang enhancement, the prosecution may ... present expert testimony on criminal street gangs." *People v. Hernandez,* 33 Cal.4th 1040, 1047–48, 16 Cal.Rptr.3d 880, 885–86 (2004); *Gardeley,* 14 Cal.4th at 617–20, 59 Cal. Rptr.2d at 363–66, 927 P.2d 713.

■■■■ The petitioner contends there was insufficient evidence to support the gang enhancement because the prosecution failed to prove the existence of two qualifying predicate offenses necessary to establish a pattern of criminal gang activity. The California Court of Appeal disagreed, holding:

> The jury here was specifically instructed that at least one of the offenses must have occurred after September 26, 1988, and the last of the crimes must have occurred within three years after a prior offense. [¶] As proof of the predicate crimes, the prosecution relied upon Carey Hightower's voluntary manslaughter conviction in 1999 and Dimitrius Bran-

---

**6.** The enumerated criminal acts consist of: assault with a deadly weapon or by means of force likely to produce great bodily injury; robbery; unlawful homicide or manslaughter; the sale, possession for sale, transportation, manufacture, offer for sale, or offer to manufacture controlled substances; shooting at an inhabited dwelling or occupied motor vehicle; discharging or permitting the discharge of a firearm from a motor vehicle; arson; the intimidation of witnesses and victims; grand theft; grand theft of any firearm, vehicle, trailer, or vessel; burglary; rape; looting; money laundering; kidnapping; mayhem; aggravated mayhem; torture; felony extortion; felony vandalism; carjacking; the sale, delivery, or transfer of a firearm; possession of a pistol, revolver, or other firearm capable of being concealed upon the person; threats to commit crimes resulting in death or great bodily injury; and theft and unlawful taking or driving of a vehicle. P.C. § 186.22(e)(1–25) (2004).

**7.** At the time of petitioner's conviction, P.C. § 186.22(e) provided:

> "pattern of criminal gang activity" means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the [offenses enumerated in this section], provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons.

P.C. § 186.22(e) (2004).

non's attempted murder conviction in 1998. Hightower was a member of the Four Corner Hustler Crips, but Brannon was not, although he committed the attempted murder for the benefit of the Four Corner Hustler Crips. [¶] [Petitioner] argues that Brannon's conviction does not qualify as a predicate offense since there was no evidence presented that he was ever a member of the Four Corner Hustler Crips. We agree. The statute clearly requires that *"members individually or collectively engage in . . . a pattern of criminal gang activity."* (§ 186.22, subd. (f), italics added.) Nonetheless, the evidence still established the two predicate offenses. As noted by respondent, the current offense can be counted as one of the two predicate offenses to establish a pattern of criminal gang activity. The current attempted murder was committed on December 5, 2000. Thus, it was committed within the statutorily required time period of Hightower's conviction in 1999. [¶] [Petitioner] asserts that the jury acquitted [him] of the substantive offense of active participation in a criminal street gang ( [P.C.] § 186.22, subd. (a).). He then reasons that, because the jury determined that [he] was no longer a gang member, [his] attempted murder cannot qualify as a predicate offense. Howev-

er, "none of the elements of the gang enhancement statute require the two or more persons committing the two predicate crimes be gang members *at the time* the offenses were committed." Unlike Brannon, who was apparently *never* a member of the Four Corner Hustler Crips, [petitioner] was admittedly a member of the gang. Moreover, there was ample evidence that the attempted murder was committed for the benefit of the gang, including the statements [petitioner] made while jumping on Jason's head. [¶] Viewing the evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence to support the gang enhancement.

Lodgment no. 10 at 9–10 (citations omitted).

 Under California law, a "criminal street gang" is an ongoing association of at least three people with a common name or identifying sign or symbol, which "has as one of its primary activities the commission of one or more of the criminal acts" enumerated in P.C. § 186.22(e),[8] and whose members, individually or collectively, "have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting" at least two predicate offenses within the statutory period.[9]

---

**8.** "To trigger the gang statute's sentence enhancement provision, the trier of fact must find that one of the alleged criminal street gang's primary activities is the commission of one or more of certain crimes listed in the gang statute." *People v. Sengpadychith*, 26 Cal.4th 316, 322, 109 Cal.Rptr.2d 851, 856, 27 P.3d 739 (2001). Here, expert witness Deputy Sheriff Orona testified about the history of the Four Corner Hustler Crips, opined the Four Corner Hustler Crips is a street gang with a common name or symbol, stated the Four Corner Hustler Crips primary activities include murders, attempted murders, assaults with deadly weapons, assaults and selling rock cocaine and marijuana, and provided several examples of gang members' felonious

activities. RT 174:17–181:7, 190:7–193:26. With the exception of simple assault, the primary activities Deputy Sheriff Orona identified are all statutorily-enumerated offenses, P.C. § 186.22(e)(1), (3) & (4) (2004), and his testimony is sufficient to establish the primary criminal activities of the Four Corner Hustler Crips. *Gardeley*, 14 Cal.4th at 616, 59 Cal. Rptr.2d at 363, 927 P.2d 713.

**9.** To fall within the statutorily defined period, at least one of the predicate offenses must have occurred "after the effective date" of the STEP Act, September 26, 1988, and the last of the predicate offenses must have occurred "within three years after a prior offense."

*Hernandez,* 33 Cal.4th at 1047, 16 Cal. Rptr.3d at 885, 94 P.3d 1080 (citation and some internal quotation marks omitted); *Gardeley,* 14 Cal.4th at 616–17, 59 Cal. Rptr.2d at 363, 927 P.2d 713. Thus, under P.C. § 186.22(e), "[t]he term 'pattern of criminal gang activity' only requires: the attempted or completed commission or a conspiracy to commit two or more of the ... offenses [enumerated in P.C. § 186.22(e)]; one of the offenses must have occurred after September 26, 1988, the effective date of [the statute]; the last of the two requisite offenses must have occurred within three years after the first crime; [and] the predicate crimes must have either been committed on separate occasions or by at least two different persons." *People v. Augborne,* 104 Cal.App.4th 362, 374–75, 128 Cal.Rptr.2d 258 (2002); *People v. Loeun,* 17 Cal.4th 1, 8–10, 69 Cal.Rptr.2d 776, 780–81, 947 P.2d 1313 (1998), *cert. denied,* 523 U.S. 1129, 118 S.Ct. 1820, 140 L.Ed.2d 957 (1998). For the purpose of establishing a "pattern of criminal gang activity," the predicate offenses need not be "gang related," and the charged offense may serve as a predicate offense. *Gardeley,* 14 Cal.4th at 621–25, 59 Cal.Rptr.2d at 366–69, 927 P.2d 713; *see also Loeun,* 17 Cal.4th at 11, 69 Cal. Rptr.2d at 781, 947 P.2d 1313 ("[T]he prosecution can establish the requisite 'pattern' exclusively through evidence of crimes committed contemporaneously with the charged incident.").

Here, expert witness Deputy Sheriff Orona testified that in October 1999, a Four Corners Hustler Crips gang member named Carey Hightower killed another gang member and subsequently pled guilty to voluntary manslaughter. RT 191:23–193:26. This crime serves as one predicate offense, P.C. § 186.22(e)(3) (2004), and petitioner does not seriously contest this. Petition at 32–35. Furthermore, petitioner attempted to murder Sawyer on December 5, 2000, within three years of Hightower's offense, and attempted murder is an enumerated offense under the STEP Act. P.C. § 186.22(e)(3) (2004); *Gardeley,* 14 Cal.4th at 625, 59 Cal.Rptr.2d at 368–69, 927 P.2d 713.

 Nevertheless, petitioner contends that because the jury found petitioner not guilty of violating P.C. § 186.22(a),[10] CT 234, 245, the predicate offense does not qualify under P.C. § 186.22(b). Petitioner is incorrect. "[N]one of the elements of the gang enhancement statute require the two or more persons committing the two predicate crimes be gang members *at the time* the offenses were committed [,]" *Augborne,* 104 Cal.App.4th at 375, 128 Cal. Rptr.2d at 267; *People v. Martinez,* 158 Cal.App.4th 1324, 1332, 70 Cal.Rptr.3d 680 (2008), and there is no question that petitioner was, at one time, a member of the Four Corner Hustler Crips. RT 181:18–187:4, 254:18–255:2, 271:1–9. Therefore, "the prosecution established the requisite 'pattern of criminal gang activity' consisting of 'two or more' statutorily enumerated offenses that were 'committed on separate occasions, or by two or more persons.'" *Gardeley,* 14 Cal.4th at 625, 59 Cal.Rptr.2d at 368–69, 927 P.2d 713.

P.C. § 186.22(e); *Gardeley,* 14 Cal.4th at 616, 59 Cal.Rptr.2d at 363, 927 P.2d 713.

**10.** At the time of petitioner's conviction, P.C. § 186.22(a) provided:

Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years.

P.C. § 186.22(a) (2004).

Accordingly, the California Supreme Court's denial of Grounds One and Two was neither contrary to, nor an unreasonable application of, clearly established federal law.

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

DATE: March 19, 2008