[No. G039120. Fourth Dist., Div. Three. June 5, 2008.]

In re ANGEL R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ANGEL R., Defendant and Appellant.

**COUNSEL**

Kurt David Hermansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda Cartwright-Ladendorf and Deborah La Touche, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SILLS, P. J.**—Angel R. appeals from the order of the juvenile court finding him a ward of the court and placing him on probation after sustaining a petition charging him with possessing a switchblade knife, graffiti tools and less than an ounce of marijuana. (See Pen. Code, §§ 594.2, subd. (a), 653k; Health & Saf. Code, § 11357, subd. (b).) Although Angel brought a motion to suppress evidence, it was not pursued by newly appointed counsel before its hearing, an omission which Angel now characterizes as ineffective assistance of counsel. He also attacks the sufficiency of evidence to support the misdemeanor offenses of switchblade possession and graffiti tools. We affirm.

### FACTS

In response to a citizen's complaint of four suspicious males displaying gang signs at an intersection, Anaheim Police Officers Salcido and Coursey proceeded to the nearby Palm Lane Park and found Angel in the company of three other young males. Salcido approached them and immediately noticed that Angel had bloodshot eyes and smelled of marijuana. When asked, Angel informed Salcido that he had some "weed" in his pocket. Salcido asked for, and received, Angel's consent to search his person: The result was the discovery of a baggie of marijuana, an orange fluorescent marker and a pocketknife.

Salcido arrested Angel and took him to the police station without giving him *Miranda* advice.[1] As the two entered the building, Salcido cautioned Angel that, if he was carrying any other contraband, he would be charged with bringing contraband into the police station.[2] Angel immediately replied, "It's in my shoe," kicking off his left one. Inside, adhesive stickers with graffiti-style lettering and the initial of a "tagging crew" were found.

Expert testimony from a knifemaker, Ronald Clark, established that the pocketknife was a "liner lock" knife: a folding knife that locks when opened. As originally designed and manufactured, a hole in the back of the blade prevented the knife from opening without specific pressure exerted on the opening button. However, the knife had been either intentionally modified or accidentally damaged so that the resistance mechanism did not function, which means this knife opens with a flick of the wrist. Nonetheless, the expert opined that this knife still did not meet the legal definition of a switchblade because it had been manufactured with a resistance mechanism, although the juvenile court concluded otherwise because of its present ability to open and lock with a mere flick of the wrist.

---

[1] See *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

[2] See Penal Code sections 4573.8, 4573.9 and 4574.

## DISCUSSION

### A. Ineffective Assistance

Angel's first trial counsel filed a motion to suppress the responses—both verbal and nonverbal—Angel gave to Salcido's inquiry regarding contraband because it was posed before any *Miranda* warning. However, subsequent counsel failed to pursue the motion by permitting the court to order it off calendar. Angel now claims this constituted ineffective representation because all evidence of the graffiti possession was found in response to Salcido's un-*Mirandized* warning.

■ Angel bears the two-pronged burden of showing that his counsel's representation fell below prevailing professional norms and that he was prejudiced by that deficiency. (See *Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 104 S.Ct. 2052].) However, a presumption in support of counsel's performance exists, forcing us to conclude that counsel's choice of actions was simply " 'sound trial strategy' . . . 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 746 [47 Cal.Rptr.3d 326, 140 P.3d 657]; see *People v. Lucas* (1995) 12 Cal.4th 415, 436–437 [48 Cal.Rptr.2d 525, 907 P.2d 373].)

Angel replies that there could be no satisfactory explanation for failing to bring a suppression motion when his statement and gesture were "involuntary and obtained in violation of *Miranda*." Without that statement and gesture, the graffiti stickers would never have been discovered, he argues, as they were the direct "fruit" of the inadmissible reply. (*Wong Sun v. United States* (1963) 371 U.S. 471, 491 [9 L.Ed.2d 441, 83 S.Ct. 407].) He concludes that counsel's failure to pursue the suppression resulted in the withdrawal of a potentially meritorious defense and mandates a reversal of the judgment.

■ We need not address the merit of the suppression motion because the discovery of the stickers was inevitable in this situation: Angel would have been searched at booking as incident to his arrest (see, e.g., *People v. Ross* (2008) 162 Cal.App.4th 1184 [76 Cal.Rptr.3d 477]), and the stickers would have been discovered at that point. Inevitable discovery[3] of evidence is a legitimate basis for denial of a suppression motion, even one focusing on the

---

[3] The "doctrine of 'inevitable discovery . . .' . . . [pivots on the fact that] 'there is no nexus [to the illegality] sufficient to provide a taint.' [Citation.]" (*Green v. Superior Court* (1985) 40 Cal.3d 126, 136–137 [219 Cal.Rptr. 186, 707 P.2d 248], citations omitted, quoting *Nix v. Williams* (1984) 467 U.S. 431, 448 [81 L.Ed.2d 377, 104 S.Ct. 2501].) "[T]he doctrine 'is in reality an extrapolation from the independent source doctrine: *Since* the tainted evidence would

involuntariness of an admission or one obtained in violation of *Miranda*. (E.g., *Green v. Superior Court, supra*, 40 Cal.3d at p. 136.)

Angel replies that there is no factual basis for such a conclusion in the record because, without a suppression hearing, we cannot conclude such booking searches even occur much less what procedures are employed in them by the Anaheim Police Department. Because the prosecution carries the "burden of legally and factually demonstrating that the inevitable discovery doctrine is properly applied in this case" (*People v. Robles, supra*, 23 Cal.4th at pp. 789–801), Angel argues it cannot be asserted here without a record concerning such matters.

We are not reviewing the record of a hearing from which a trial court rendered a ruling. Rather, we are revisiting the information available to trial counsel—whom, we note, has *not* been asked for a subjective explanation for his or her decision to allow the motion to be taken off calendar. Here, the record *does* "fully set forth" a factual basis for the theory. (*People v. Robles, supra* 23 Cal.4th at p. 801, fn. 7.) First, Salcido testified that he advised Angel that he would be searched at booking. Salcido has been an officer with the Anaheim Police Department for five and a half years, having received "in-house training from the Anaheim Police Department and City Attorney's Office." Based on Salcido's testimony, any competent prosecutor would have quickly argued the obvious: Angel would have been searched, including his shoes, when he was booked into the detention center. In light of these facts, trial counsel could have reasonably concluded, as a matter of trial tactics, that the suppression motion lacked viability.

 No attorney is required to make clearly unmeritorious motions simply to "create a record impregnable to assault for claimed inadequacy of counsel." (*People v. Weston* (1981) 114 Cal.App.3d 764, 780 [170 Cal.Rptr. 856].) As there is a reasonable tactical explanation for trial counsel's action, we *must* reject Angel's ineffective assistance of counsel claim. (See *People v. Ledesma, supra*, 39 Cal.4th at pp. 745–746.) Angel carries the burden of showing both that the claimed inaction " 'fell below an objective standard of reasonableness . . . under prevailing professional norms.' . . . [and that there is] a 'reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different.' " (*Id.* at p. 746.) Angel has failed to meet this burden.

---

be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.' " (*People v. Robles* (2000) 23 Cal.4th 789, 800 [97 Cal.Rptr.2d 914, 3 P.3d 311].)

## B. Sufficiency of Evidence for Switchblade

Angel contends the evidence is insufficient to sustain the court's finding he possessed a switchblade as that is defined under section 653k of the Penal Code.[4] He requested that we physically examine the switchblade itself, which we subsequently received as a trial exhibit.

■ Section 653k proscribes the possession of "a switchblade knife having a blade two or more inches in length . . . ." It then defines a switchblade knife as "having the appearance of a pocketknife and includes a . . . snap-blade knife, gravity knife or any other similar type knife, the blade or blades of which are two or more inches in length and which can be released automatically by a flick of a button, pressure on the handle, *flip of the wrist* . . . or is released by the weight of the blade . . . . [However, it] does not include a knife that opens with one hand utilizing thumb pressure applied solely to the blade of the knife . . . provided that the knife has a detent or other mechanism that provides resistance that must be overcome in opening the blade, or that biases the blade back toward its closed position." (Italics added.) Angel argues that his knife "falls into the area of overlap between the definition and the exemption: It is a folding knife with a detent mechanism providing resistance to opening the blade, but the resistance is slight and therefore the knife can be opened with a strong flip of the wrist."

The standard of review is well established: We " 'must view the evidence in the light most favorable to the judgment and presume in favor of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. To be sufficient, evidence of each of the essential elements of the crime must be substantial and we must resolve the question of sufficiency in light of the record as a whole.' [Citation.]" (*People v. Carpenter* (1997) 15 Cal.4th 312, 387 [63 Cal.Rptr.2d 1, 935 P.2d 708].) Angel acknowledges this rule but argues that it is the lower court's *interpretation* of the statute that is in question—and refers us to *People v. Goldberg* (2003) 105 Cal.App.4th 1202, 1206 [130 Cal.Rptr.2d 192]—thus permitting *us* to review the entire issue de novo.

■ The language of the statute is clear and unambiguous; nothing in the record indicates the lower court was confused, misled, or unclear as to the terms or language of the statute. When the language of a specific statute has " 'no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' [Citation.]" (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639].) By analogy, when the language of the statute is clear, we do not review a factual finding under it de novo.

---

[4] All further statutory references are to the Penal Code.

The lower court specifically found, *as the trier of fact,* that the knife opened if held "upside down with the blade facing the floor and you just drop your hand." The court noted that it was "not pressing anything . . . The mechanism has been modified or worn out where the handle of the knife that covered that portion of the detent or the item that gave resistance to the blade from being opened is just not functioning. And so *it does open up with just a flick of the wrist,* and it does go into a locking position when the blade is opened." (Italics added.) The court accepted the expert's "credentials and experience, but I do think the broken part of the handle on this knife has altered the knife,"[5] a point specifically rejected by the expert who emphasized that this knife was designed and manufactured *with* a detent. Therefore, in the expert's opinion, even if it had been intentionally altered to eliminate the resistance mechanism, it would *never* constitute a switchblade.

▪ Angel maintains that, based on comments provided by the author of the amendment to the statute, even if the blade can be opened easily with but one hand, it does not constitute a switchblade as long as *some* resistance is provided by the detent mechanism, no matter how slight. However, the language of the statute is not ambiguous or subject to multiple interpretations. Therefore, an examination of the legislative history is unnecessary. (*Allen v. Sully-Miller Contracting Co., supra,* 28 Cal.4th at 227.) Moreover, for the amendment exemption to apply, the knife must be one that "opens with one hand utilizing thumb pressure applied solely to the blade of the knife or a thumb stud attached to the blade" *and* has the detent or resistance mechanism. The knife in question was not of that type: It opened by merely a flick of the wrist, not with pressure on the blade or thumb stud. Thus, the author's statements are irrelevant in attacking the court's finding under this statute.

The finding is sustained.

### C. Sufficiency of Evidence for Graffiti Tools

Angel objects to the court's finding the stickers in his shoe and the felt marker from his pocket comprise graffiti tools proscribed by section 594.2, subdivision (a). We partially disagree.

When Salcido first searched Angel's pockets and found the marijuana, the felt marker and the knife, Angel told him that he carried the knife for protection, the stickers for "tagging" as part of a tagging crew,[6] and the

---

[5] At the initial encounter between Angel and Salcido, Angel said he knew the handle was broken.

[6] Tagging is the term for marking walls and surfaces with graffiti. A tagging crew is a group of taggers formed for the specific purpose of marking surfaces with identifying letters, names

marker for tagging purposes. Angel replies that his statements are irrelevant if the items are not either listed in the statute or fall within the description of graffiti tools.

As we previously stated, we review a verdict for evidence sufficiency under the substantial evidence standard: "[A]n appellate court 'must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " [Citation.]' [Citation.]" (*In re Manuel G.* (1997) 16 Cal.4th 805, 822 [66 Cal.Rptr.2d 701, 941 P.2d 880].)

### 1. The Felt Marker

■ Section 594.2, subdivision (a), prohibits the possession of "an aerosol paint container, a felt tip marker, *or any other marking substance* with the intent to commit vandalism or graffiti." (Italics added.) In subdivision (c)(1), a felt tip marker is further defined as "any broad-tipped marker pen with a tip exceeding three-eights of one inch in width, or any similar implement containing an ink that is not water soluble." In subdivision (c)(2), a marking substance is further defined as "any substance or implement, other than aerosol paint containers and felt tip markers, that could be used to draw, spray, paint, etch, or mark." Angel contends no evidence in the record supports the finding that the orange fluorescent marker met subdivision (c)(1)'s requirements and the stickers met the definition of a marking substance. As to his first contention, he is correct. Moreover, neither evidence nor argument was ever proffered that the orange fluorescent marker was evidence of Angel violating section 594.2. However, no *finding* was ever made that the marker was the basis of the section 594.2 charge: the petition merely reiterated the language of the statute without delineating the objects, and the prosecutor only argued the stickers were the basis for the graffiti tool charge. The juvenile court *did* command the officer to leave the marker with the court, but it was never marked for identification, examined by anyone, nor admitted into evidence. Thus, the attack on the marker as a violation of section 594.2, subdivision (a) appears unnecessary because it was never the basis of the verdict.

---

or logos. Angel's tagging crew was called "Buzzing with Korona" and the stickers found in Angel's shoe had the black letters, B, W and K.

## 2. The Stickers

■ "It is axiomatic the prosecution bears the burden of proving each element of a criminal offense charged beyond a reasonable doubt. [Citations.]" (*In re Khamphouy S.* (1993) 12 Cal.App.4th 1130, 1134 [15 Cal.Rptr.2d 882].) Angel contends the prosecution failed to show that these stickers—some of which were merely adhesive letters while others were labels with letters already marked on them—were "marking substance[s]" falling within the proscription of the statute. A marking substance is defined in section 594.2, subdivision (c)(2) as "any substance *or implement,* other than aerosol paint containers and felt tip markers, that could be used to draw, spray, paint, etch, or mark." (Italics added.)

Angel argues that the stickers are not implements because the dictionary defines an implement as "an article (as of apparel or furniture) serving to equip . . . [or] a tool or utensil forming part of equipment for work . . . ." (Webster's 3d New Internat. Dict. (1981) p. 1134.) However, the same source includes in its definition that the word "implement," "applies to anything, usu. a contrivance, necessary to effect an end or perform a task." (*Ibid.*) Moreover, Black's Law Dictionary (4th ed. 1951) at page 888 includes within its definition of "implements" the term ". . . [w]hatever may supply wants; particularly applied to tools, utensils, *vessels* . . . ." (Italics added.)

Angel maintains that an implement can only be something which retains its own existence after its use to accomplish some other task, such as a chisel, axe or pencil. He emphasizes that the sticker *becomes* the task itself and has no separate existence. Thus, it cannot be an implement.

We disagree. If an implement can *only* be something used to do something else and yet retain a *separate* existence, then a billboard would not be an implement of advertising. The billboard *becomes* the thing it was used to accomplish: advertising.

■ Five stickers—those marked as Exhibit 2—were blue and separately marked with "black-colored graffiti style tagging" and four stickers—those marked as Exhibit 3—were adhesive-backed letters: B, W and K, the exact letters constituting the monogram of Angel's tagging crew, Buzzing with Korona. These items could be used quickly to mark the surfaces without the time expenditure that either painting or writing would require. These items could be used to "effect [the] end" of marking public surfaces or "perform [the] task" of publicly announcing the tagging crew's identity. (Webster's 3d New Internat. Dict., *supra,* at p. 1134.) They "supply [the] want" of quickly marking a surface with specific tagging signs, designs or letters. (Black's Law Dict. (4th ed. 1951) p. 888.) Thus, they fall within the definition of an implement as proscribed by statute.

The order of the juvenile court is affirmed.

O'Leary, J., and Moore, J., concurred.