[No. G045929. Fourth Dist., Div. Three. Nov. 29, 2012.]

In re GILBERT R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
GILBERT R., Defendant and Appellant.

Counsel

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor, Melissa Mandel and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

ARONSON, Acting P. J.—Gilbert R. appeals from the juvenile court's order sustaining the district attorney's delinquency petition (Welf. & Inst. Code, § 602) and placing him on supervised probation based on his misdemeanor possession of a switchblade knife as defined in Penal Code former section 653k (now codified at Pen. Code, § 17235). (All undesignated statutory references are to the Penal Code.) Gilbert contends the knife he possessed falls under the Legislature's express exception identifying knives that do not constitute a switchblade (former § 653k [" 'Switchblade knife' does not include . . ."]), and therefore the evidence does not support the juvenile court's delinquency finding. We agree and accordingly reverse the juvenile court's order.

I

FACTUAL AND PROCEDURAL BACKGROUND

Anaheim Police Officer Erin Moore stopped Gilbert on foot near an area where graffiti had recently been sprayed because he matched a description of the suspect. He denied involvement in the offense, but when she asked if he possessed "anything illegal," he produced a knife from his sweatshirt pocket. It was approximately seven inches long, with a three-inch blade folded in a closed position, and Moore discovered she could open it with a flick of her wrist. The district attorney filed a delinquency petition based on Gilbert's possession of the knife, and Moore demonstrated at the hearing her ability to open the knife by flipping her wrist.

Sam Martin of Plaza Cutlery at South Coast Plaza testified as a knife and cutlery expert called by the defense. He explained that while military or law enforcement personnel and others trained in the use of knives might be able to open the knife with relative ease by a flick of the wrist, lay users generally

would not be able to do so, at least at first. But with practice, "[t]hose who have it in their hand a good number of hours a day would learn a dexterity that could indeed flip the blade like this open."

Martin demonstrated that the knife did not easily open because it had a "positive detent, . . . a mechanism which holds the blade in the closed position and you have to provide enough resistance to overcome that for the blade to swing open." Martin held the knife upside down and shook it, but the blade did not descend despite the shaking. Martin explained the detent operated as "a positive retention device" to keep the blade closed. The detent feature was held in place by a "set screw," which had become "a little bit wobbly," reducing the detent pressure by approximately 15 percent according to Martin, but he explained it remained "well within" the manufacturer's parameters, "functioning in all [*sic*] fashion."

Martin identified other features of the knife. It did not open with the push of a button alone or in conjunction with a wrist flip. Rather, it had a "thumb stud or thumb disk" along the top part of the blade, which Martin opined conformed to state law governing switchblades (former § 653k) because the knife was "designed to be held in one hand and opened with pressure to the thumb [stud] overcoming the positive detent mechanism."

Martin also explained the knife had other "extra features not found on ordinary pocket knives." Martin identified a mushroom-shaped protrusion on one end as a "glass impactor[:] a button protruding from the end for emergency extraction. You would be using it in a fashion to frankly break the glass and extract a person [from] a vehicle." Martin also pointed out as a feature for "an E.M.T. or . . . other emergency person[nel]" an opening in the body of the knife "which is for . . . seat belt cutting . . . [;] [i]t's to cut straps or other restraints to get a person out of a car." Martin identified the knife in "industry" parlance "as a SARK, S-A-R-K, search and rescue knife."

The juvenile court found Gilbert's knife was a switchblade, and therefore sustained the petition. The court explained it had concluded "a switchblade knife is one that can be opened—one that can be opened by a flip of the wrist, and this knife can be opened by the flip of a wrist. We saw it several times, both from the officer and from Mr. Martin. [¶] And, as I said, I inspected the knife myself and found that is true, it can be opened by the flip of the wrist. That makes it a switchblade."

## II

## DISCUSSION

Gilbert contends the juvenile court misinterpreted the Legislature's prohibition against "switchblades" as applying to all knives that may be opened by

flipping one's wrist, even against mechanical or other resistance and in conjunction with other actions. We agree the court erred and that the evidence could not be reconciled with the conclusion Gilbert possessed a switchblade as that term is defined by law, given that the knife met the requirements of an express statutory exception.

The relevant statutory terms define a prohibited "switchblade knife," followed by an express exception. The definition is as follows: "As used in this part, 'switchblade knife' means a knife having the appearance of a pocketknife and includes a spring-blade knife, snap-blade knife, gravity knife, or any other similar type knife, the blade or blades of which are two or more inches in length and which can be released automatically by a flick of a button, pressure on the handle, flip of the wrist or other mechanical device, or is released by the weight of the blade or by any type of mechanism whatsoever." (§ 17235; see former § 653k.)

■  The spring-blade, snap-blade, and other categories of knives expressly prohibited by this language are not exhaustive; rather, the statutory language embraces knives that operate in a similar fashion to those listed. (*People ex rel. Mautner v. Quattrone* (1989) 211 Cal.App.3d 1389, 1395 [260 Cal.Rptr. 44].) Thus, the statute bars possession of a knife having (a) the appearance of a pocketknife and (b) a blade two or more inches in length that releases mechanically or automatically through pressure on the handle, a flip of the wrist, gravity or the weight of the blade, or in a similar manner. (*In re Luke W.* (2001) 88 Cal.App.4th 650, 656 [105 Cal.Rptr.2d 905].)

The Legislature has provided as an express exception, however, that a " '[s]witchblade knife' does not include a knife that opens with one hand utilizing thumb pressure applied solely to the blade of the knife or a thumb stud attached to the blade, provided that the knife has a detent or other mechanism that provides resistance that must be overcome in opening the blade, or that biases the blade back toward its closed position." (Former § 653k, now § 17235.)

A "detent" is "a device (as a catch, dog, or spring-operated ball) for positioning and holding one mechanical part in relation to another in a manner such that the device can be released by force applied to one of the parts." (Merriam-Webster Dict. <http://www.merriam-webster.com/dictionary/detent> (as of Nov. 29, 2012); see 4 Oxford English Dict. (2d ed. 1989) p. 545 [defining "detent" as "[a] stop or catch in a machine which checks or prevents motion"].) The expert below, for example, described a "detent mechanism" as one that "holds the blade[] in the fixed and closed position," allowing the blade to be "opened with pressure [by] the thumb . . . overcoming the positive detent

mechanism."[1] Conversely, the absence of a functioning detent or similar mechanism in *In re Angel R.* (2008) 163 Cal.App.4th 905 [77 Cal.Rptr.3d 905] (*Angel R.*) was evident when "the knife opened if held 'upside down with the blade facing the floor and you just drop your hand.' " (*Id.* at p. 912.)

■ " 'In interpreting statutes, we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law . . . .' " (*People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313]; see *People v. Ramirez* (2010) 184 Cal.App.4th 1233, 1238 [109 Cal.Rptr.3d 474] [" 'the words the Legislature chose are the best indicators of its intent' "].) Absent ambiguity, " ' "we presume the lawmakers meant what they said, and the plain meaning of the language governs." ' [Citation.]" (*Angel R., supra,* 163 Cal.App.4th at p. 911.)

We find the statutory definition of a "switchblade" and its exempting language quite clear. (*Angel R., supra,* 163 Cal.App.4th at p. 911 [§ 653k is "clear and unambiguous"].) As we explained in *Angel R.,* for the exemption to apply, "the knife must be one that 'opens with one hand utilizing thumb pressure applied solely to the blade of the knife or a thumb stud attached to the blade' *and* has the detent or resistance mechanism." (*Angel R., supra,* 163 Cal.App.4th at p. 912.) Nothing in these requirements prevents a user from more quickly opening a knife by employing a wrist flip in conjunction with pressure on the blade or its thumb stud and disengaging the detent or other resistance mechanism.

Reviewing courts may turn to the legislative history behind even unambiguous statutes when it confirms or bolsters their interpretation, and that is the case here.[2] (See, e.g., *Samantar v. Yousuf* (2010) 560 U.S. 305, ___, fn. 9 [176 L.Ed.2d 1047, 130 S.Ct. 2278, 2287, fn. 9]; *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 316 [93 Cal.Rptr.3d 559, 207 P.3d 20].) Before 2001, the switchblade exemption covered "a knife that is designed to open with one

---

[1] The American Knife and Tool Institute has published on its Web site an article entitled, *Understanding Bias Toward Closure and Knife Mechanisms,* which explains that a ball detent mechanism operates as follows: "When the blade is in the fully closed position, a detent or depression in the blade is engaged by a ball partially embedded or set in the liner" against which the blade rests, and "[t]he lateral spring load of the liner pushing the ball into the detent provides a way of keeping the blade in the fully closed position. [¶] . . . [¶] Opening the blade of a liner-lock design knife requires sufficient force to overcome the spring load pushing the ball into the detent." (Am. Knife and Tool Inst., *Understanding Bias Toward Closure and Knife Mechanisms,* <http://www.akti.org/resources/additional-definitions> [as of Nov. 29, 2012].) We take judicial notice of this reference material. (Evid. Code, §§ 452, subd. (h), 459, subd. (b).)

[2] We grant Gilbert's unopposed request for judicial notice of the legislative history of former section 653k. (Evid. Code, §§ 452, subds. (b) & (c), 459, subd. (b).)

hand utilizing thumb pressure applied solely to the blade of the knife or a thumb stud attached to the blade" (former § 653k), which unquestionably would include defendant's knife. In 2001, the Legislature in Senate Bill No. 274 (2001–2002 Reg. Sess.) added to the exemption the current language requiring a detent or similar resistance mechanism.

The legislative history for Senate Bill No. 274 (2001–2002 Reg. Sess.) reflects its purpose was to "narrow[]" existing statutory "language to only allow knives to fall under the exemption from the switchblade law if that one-handed opening knife contains a detent or similar mechanism. Such mechanisms ensure there is a measure of resistance (no matter how slight) that prevents the knife from being *easily* opened with a flick of the wrist. Moreover, a detent or similar mechanism is prudent and a matter of public safety as it will ensure that a blade will not inadvertently come open. [¶] Although some one-handed opening knives *can be opened with a strong flick of the wrist*, so long as they contain a detent or similar mechanism that provides some resistance to opening the knife, then the exemption is triggered. These knives serve an important utility to many knife users, as well as firefighters, EMT personnel, hunters, fishermen, and others." (Sen. Karnette, author of Sen. Bill No. 274 (2001–2002 Reg. Sess.), letter to Pres. pro tempore of the Sen., July 18, 2001, reprinted in 2 Sen. J. (2001–2002 Reg. Sess.) p. 2070, italics added.)

■ Here, the uncontradicted testimony of the expert demonstrated Gilbert's knife had both the necessary thumb stud "intended for this knife to stay closed" and "a detent mechanism" to hold the blade "in the fixed and closed position" until "opened with pressure to the thumb [stud] overcoming the positive detent mechanism." The expert acknowledged the detent mechanism required "minor maintenance" because it had loosened to where it provided 85 percent of the resistance it achieved when the knife was new. But 85 percent effectiveness is still a substantial measure of resistance and falls within the plain terms of the exemption language requiring "resistance that must be overcome in opening the blade." (Former § 653k.) The expert, for example, *shook* the knife upside down and it did not open. The juvenile court, however, imposed a standard beyond that required by law, namely, that the knife could not be opened by any flip of the wrist, even in conjunction with the requisite thumb pressure and disengaging the detent mechanism. Consequently, we must reverse.

## III

## DISPOSITION

The juvenile court's jurisdiction and dispositional order is reversed.

Ikola, J., and Thompson, J., concurred.