Filed 3/8/13  In re Jason M. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re JASON M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JASON M.,<br><br>    Defendant and Appellant. | A133453<br><br>(Sonoma County<br>Super. Ct. No. J36981) |

Appellant Jason M. (Minor) admitted to having raped a young woman in concert with another by means of force or fear of immediate and unlawful bodily injury.  (Pen. Code, §§ 261, 264.1, subd. (a).)  Based on that admission, the juvenile court committed Minor to the custody of the Division of Juvenile Justice of the California Department of Corrections and Rehabilitation (DJJ).  Minor now challenges the juvenile court's dispositional order, arguing the court abused its discretion in committing him to DJJ.  He also claims his trial counsel rendered ineffective assistance at the dispositional hearing. Minor further contends he should not be subject to sex offender registration requirements and residency restrictions when he is discharged or paroled from DJJ.  Finally, he argues the record does not reflect that the juvenile court considered the individual circumstances of his case in determining his term of confinement.

1

We find none of Minor's contentions persuasive. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Late in the evening of June 24, 2011, officers from the Cloverdale Police Department responded to a report that a minor female had been raped by two males. The victim told the police she had attended an event with friends earlier that evening and then walked over to a high school accompanied by Minor and another male. The victim said the three had been sitting on a bench when Minor and his accomplice pulled off her shorts, held her down, and took turns performing sexual acts on her. Minor pushed the victim (who was approximately five feet tall and weighed less than 100 pounds) down so her back was on a table and held her down. Minor forcibly pulled the victim's legs apart and penetrated her. The incident lasted approximately 30 minutes, after which Minor told the victim not to tell anyone about it.

The incident left the victim with redness and abrasions on her forearm, which she attributed to having been held down on the table. A subsequent exam showed the victim had injuries consistent with trauma likely sustained from the assault.

When the police spoke to Minor, he initially denied any involvement in the incident. After he was placed under arrest and waived his *Miranda* rights, he continued to deny having been at the high school or knowing the victim. Under further questioning, however, his account changed dramatically several times, and he eventually admitted to having had sex with the victim without her permission.

On June 29, 2011, the Sonoma County District Attorney filed an original Welfare and Institutions Code section 602 petition.[1] An amended petition was filed on August 10, 2011, charging Minor with five separate offenses—forcible rape in concert with another, forcible sexual penetration with a foreign object, forcible oral copulation, false imprisonment, and aggravated rape in concert by means of force and fear of immediate and unlawful bodily injury. The last of these offenses was a violation of Penal Code

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

2

section 264.1, subdivision (a) and a serious felony within the meaning of Penal Code section 1192.7, subdivision (c). Minor admitted the last offense in exchange for the dismissal of the other counts.

The juvenile court appointed Dr. Laura Doty to conduct a psychological evaluation of Minor prior to disposition. Dr. Doty found Minor to be "an emotionally volatile, angry and controlling boy who seems inclined to bully others[.]" In his discussions with her, he minimized his responsibility for the offense and denied the rape included violence. Dr. Doty observed that Minor "exhibited no empathy for the victim and no remorse." She noted that his longstanding history of violence raised strong reasons for concern about community safety. She explained that Minor's "pattern of minimizing and denying his behavior and his failure successfully to alter his pattern of aggressivity despite therapy, medication, school support and residential treatment are other data that suggest [Minor] likely cannot yet be managed safely outside of a highly structured setting." Dr. Doty therefore opined that Minor was not a good candidate for ordinary residential treatment and that he "require[d] a level of containment for the protection of the community that is provided only [by DJJ]." Like Dr. Doty, in her dispositional report, the probation officer recommended that Minor be declared a ward of the juvenile court and be committed to DJJ.

On September 12, 2011, the juvenile court held the dispositional hearing. The court stated on the record that it had read the probation officer's report, Dr. Doty's psychological evaluation, a letter submitted on Minor's behalf by a social worker, and Minor's own letter. The court then heard argument from counsel. It also heard from Minor's father and grandmother.

At the close of the hearing, the juvenile court committed Minor to DJJ for a maximum term of confinement of nine years. It also ordered him to pay a $500 restitution fine.

Minor filed a notice of appeal on September 28, 2011.

DISCUSSION

Minor raises a number of challenges to the dispositional order. First, he contends the juvenile court abused its discretion in committing him to DJJ by failing to consider various factors. Second, he argues his trial counsel rendered ineffective assistance by failing to investigate and present evidence that DJJ commitment would not meet his mental health needs. Third, Minor argues that the registration requirements and residency restrictions applicable to sex offenders do not apply to him and that he was entitled to a jury trial on the underlying charges. Finally, Minor contends the commitment order must be corrected to show that the court considered the individual facts and circumstances of his case in determining the term of confinement. We will address these arguments in the order raised in Minor's opening brief.[2]

I.     *The Juvenile Court Did Not Abuse Its Discretion in Committing Minor to DJJ.*

Minor contends the juvenile court abused its discretion in committing him to DJJ, because, he claims, it failed to consider various required factors before making its commitment decision. As we explain, Minor's arguments are unpersuasive.

A.     *The Juvenile Court Did Not Fail to Consider Minor's Educational Needs.*

Minor contends his commitment was an abuse of discretion because the juvenile court failed to consider his special educational needs at disposition. Relying principally on *In re Angela M.* (2003) 111 Cal.App.4th 1392 (*Angela M.*) and Education Code section 56000 et seq., Minor argues the juvenile court's alleged failure to consider whether he had special educational needs requires that we reverse the juvenile court and remand with directions that it conduct a dispositional hearing with that consideration in mind. We disagree.

Initially, we note that Minor has failed to demonstrate that this claim was raised in the juvenile court. We have independently reviewed the record, and it does not appear

---

[2] Minor concedes in his reply brief that his challenge to the restitution fine imposed at disposition is foreclosed by the California Supreme Court's decision in *People v. Villalobos* (2012) 54 Cal.4th 177. He has also abandoned his claim regarding victim restitution and his argument that the DJJ commitment order must be amended to reflect his credit for time served. We therefore need not address those issues.

that Minor's counsel objected to the juvenile court's ruling on this basis. We therefore question whether the issue is properly before us. (See *In re Brian K.* (2002) 103 Cal.App.4th 39, 42.)

Even if Minor has not forfeited the issue, it is meritless. Education Code section 56000, subdivision (a) "declares that all *individuals with exceptional needs* have a right to participate in free appropriate public education." Subdivision (d) of that section states, [i]t is the . . . intent of the Legislature to ensure that all *individuals with exceptional needs* are provided their rights to appropriate programs and services which are designed to meet their unique needs under the federal Individuals with Disabilities Education Act (20 U.S.C. Sec. 1400 et seq.)." (Italics added.) "Individuals with exceptional needs" means those persons who meet each of the several requirements enumerated in section 56026, including that such persons be "[i]dentified by an individualized education program [IEP] team as a child with a disability, as that phrase is defined in [the specified portion] of the United States Code" (Ed. Code, § 56026, subd. (a)), and that "[t]heir impairment, as described by subdivision (a), requires instruction and services which cannot be provided with modification of the regular school program in order to ensure that the individual is provided a free appropriate public education pursuant to section 1401(9) of Title 20 of the United States Code." (Ed. Code, § 56026, subd. (b).)

Although Minor was identified as a special education student, there is nothing in the record indicating that he has ever been identified by an IEP team as a child with a disability. (Ed. Code, § 56026, subd. (a).) Since he did not meet that criterion, the juvenile court could properly find Minor was not an individual with exceptional needs, and indeed, Minor does not challenge that finding on appeal. In making this finding, the juvenile court noted it had considered the probation officer's dispositional report,[3] the psychological evaluation, a letter from the Sonoma County Human Services Department, and Minor's own letter. Those materials discuss Minor's school record and the fact that

---

[3] Minor's opening brief asserts that the dispositional report "erroneously indicated that [he] had no special education needs[,]" but the record citations Minor provides do not support this claim.

5

he was a special education student.  It is therefore apparent that the juvenile court *did* consider Minor's special education needs before committing him to DJJ.

*Angela M., supra,* 111 Cal.App.4th 1392, is of no assistance to Minor.  In that case, a court appointed psychologist had reported that the minor "'must undergo an IEP' assessment." (*Id.* at p. 1395.)  The *Angela M.* court did not believe the juvenile court had given this any consideration because it "did not mention this issue when committing her to the CYA." (*Id.* at p. 1399.)  Here, the juvenile court's order includes an express finding that Minor did not have any exceptional needs.  Therefore, unlike the juvenile court in *Angela M.,* in the case before us, the juvenile court both considered and determined the issue.

B.     *Substantial Evidence in the Record Supports a Finding of Probable Benefit to Minor from DJJ Commitment.*

Minor contends his commitment to DJJ is not supported by substantial evidence that it will be of probable benefit to him.  (See § 734.)  He argues that there was no substantial evidence that commitment would meet his mental health and special education needs.[4]  We disagree.

In determining the appropriate disposition in delinquency proceedings, "the [juvenile] court shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.)  "[T]here must be evidence in the record demonstrating both a probable benefit to the minor by a [DJJ] commitment and the inappropriateness or ineffectiveness of less restrictive alternatives."

_____

[4] Minor's argument about DJJ's alleged inability to meet his special education needs is based entirely on: (1) a document that is apparently part of the record in a superior court case pending in a different county and (2) material from a website.  Minor did not seek judicial notice of these matters in the juvenile court, and we therefore do not consider them in this appeal.  (See *In re Ricardo L.* (2003) 109 Cal.App.4th 552, 556, fn. 2 [declining to take judicial notice of records of related juvenile dependency proceedings where records were not submitted to trial court]; *In re M.S.* (2009) 174 Cal.App.4th 1241, 1251, fn. 4 [court may not consider evidence found on a website where the information was not presented to the juvenile court].)  Accordingly, we reject as unsupported Minor's argument on appeal that DJJ cannot meet his special education needs.

6

(*Angela M., supra,* 111 Cal.App.4th at p. 1396.)  When the juvenile court commits a minor to DJJ, "the specific reasons for such commitment need not be stated in the record."  (*In re Jose R.* (1983) 148 Cal.App.3d 55, 59.)  We may reverse the commitment order only upon a showing of abuse of discretion.  (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 485 (*Jonathan T.*).)

Minor contends DJJ commitment is inappropriate because he is a "mentally disturbed youth" in need of mental health treatment rather than incarceration at DJJ.[5]  But Minor points to nothing in the record demonstrating that DJJ cannot meet his claimed need for mental health treatment.  (Cf. *In re Greg F.* (2012) 55 Cal.4th 393, 417 [noting that DJJ "has many rehabilitative programs that can benefit delinquent wards"].)  In fact, the record suggests otherwise.  Minor's case plan, for example, specifically calls for Minor to receive therapy for post-traumatic stress disorder and sex offender treatment. The juvenile court noted that DJJ has "an excellent structured sexual rehabilitation program" and found "it probable that [Minor] will benefit from the reformatory discipline and other specific treatment provided by [DJJ]."  This finding was sufficient, because the court was not required to find "exactly how [Minor] will benefit from being committed to DJJ."  (*Jonathan T., supra,* 166 Cal.App.4th at p. 486.)  Moreover, "[t]his court cannot assume that the superior court judge, who presided over the dispositional hearing and heard appellant's counsel's arguments, gave them no consideration or completely failed

---

[5] Minor argues that under section 733, subdivision (b), he should not have been committed to DJJ because he "is suffering from [a] contagious, infectious, or other disease that would probably endanger the lives or health of the other inmates of any facility."  (§ 733, subd. (b).)  We assume the illness to which he is referring is his claimed mental illness.  Nevertheless Minor offers no authority to support the claim that his particular asserted mental illness is the type of "contagious, infectious, or other disease" that would preclude DJJ commitment.  In any event, we need not resolve the question, because even assuming Minor's claimed mental illness is such a disease, DJJ's regulations make clear that "[n]o medical or mental health condition is an absolute barrier to a youth's acceptance to DJJ.  Each youth is evaluated on an individual basis."  (Cal. Code Regs., tit. 15, § 4171.5.)  Thus, mental illness would not in and of itself make commitment inappropriate.

7

to evaluate appellant's suitability for the [DJJ]." (*In re Ricky H.* (1981) 30 Cal.3d 176, 183-184 (*Ricky H.*).)

In addition, the record demonstrates that the juvenile court considered every one of the factors set out in section 725.5. It was aware of Minor's age and took that into account when making its ruling. It acknowledged Minor was "still a child" and "still a kid," and it noted he "was under the age of 18 years old" when he committed the offense. The juvenile court thus properly considered Minor's age. (See *Jonathan T., supra,* 166 Cal.App.4th at p. 485 [record supported conclusion that juvenile court considered the minor's age because court referred to him as a "'young man'"].)

The court also considered the circumstances and gravity of Minor's offense. Minor admitted to having forcibly raped a much smaller 15-year-old girl. Even Minor's counsel admitted that this was a "terrible case" and that her client had committed "a very serious crime[.]" The juvenile court properly took into account the facts surrounding Minor's aggravated rape when it considered the gravity of the offense. (See *In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329-1330.) It was certainly within the juvenile court's discretion to conclude that the offense was so serious it required commitment to DJJ. (*Id.* at p. 1330.)

Finally, although Minor had no prior delinquent record in Sonoma County, the court did consider Minor's "violent history," his placement at the Aldea Redwood Group Home, and his record of suspensions from school for an altercation with a fellow student, smoking marijuana, and stealing a teacher's mobile phone. Although Minor emphasizes that prior to the instant offense, he was not involved in the delinquency system, that did not preclude the juvenile court from committing him to DJJ. "[T]here is no absolute rule that a [DJJ] commitment should never be ordered unless less restrictive placements have been attempted." (*Ricky H., supra,* 30 Cal.3d at p. 183.) Thus, "it is clear that a commitment to [DJJ] may be made in the first instance[.]" (*In re Asean D.* (1993) 14 Cal.App.4th 467, 473.) Furthermore, even if this offense "represented [Minor's] first step off the path of virtue, it was a giant one." (*Id.* at p. 474, fn. omitted.)

C.      *The Juvenile Court Did Not Fail to Consider Less Restrictive Placements.*

Minor contends the juvenile court abused its discretion by (1) failing to conduct an individualized assessment of his needs, (2) focusing only on the seriousness of the offense, and (3) failing to consider less restrictive placement alternatives. Minor's first two contentions fail for the reasons set out in the previous section. That is, the record contains substantial evidence demonstrating the juvenile court did conduct such an individualized assessment, and it did not focus solely on the seriousness of the offense but considered all statutorily required factors.

The record also does not support Minor's contention that the juvenile court failed to consider less restrictive alternative treatments. The dispositional report noted Minor had received outpatient psychological treatment since late 2008 and that he had spent a year in the Aldea Redwood Group Home. Although "his aggressive behavior reduced in frequency" while in residential treatment, the instant offense followed the conclusion of that treatment. The juvenile court was thus well aware of Minor's experience with less structured treatment environments. (See *Angela M., supra,* 111 Cal.App.4th at p. 1397.)

Furthermore, at the dispositional hearing, Minor's counsel expressly proposed less restrictive alternatives to the juvenile court. She noted Minor had gotten through a program at the Aldea group home, and she suggested he be placed "in a therapeutic setting in a sex-offender-style group home." Minor's counsel also raised the possibility that the court "could impose DJJ by suspending it, because the case is so serious, where if . . . [Minor] doesn't comply . . . then the DJJ would be imposed without question[.]" Counsel also asked the court to consider a commitment to DJJ for less than the maximum term of nine years. In light of this record, we could not hold that the juvenile court failed to consider less restrictive alternatives unless we were to assume the court gave the record and counsel's arguments no consideration at all. The California Supreme Court has made it abundantly clear that we may not so assume. (*Ricky H., supra,* 30 Cal.3d at pp. 183-184.)

D.    *The Juvenile Court Made All Findings Required by Section 726.*

There is no merit to Minor's contention that the juvenile court abused its discretion by failing to make one of the findings required by section 726, subdivision (a). As Minor acknowledges, on the juvenile court's September 12, 2011 dispositional findings and order, the court circled the statement, "The welfare of the minor requires that custody be taken from minor's parent(s)." This language is virtually identical to that of section 726, subdivision (a)(3). Thus, the court did just what appellant states it was required to do: "make an express finding pursuant to section 726 in the language of the statute at a minimum in support of its removal order." The California Supreme Court has held that the requirement for findings under section 726, subdivision (a) is satisfied if the juvenile court checks a box reciting the language of the statute. (*In re Kenneth H.* (1983) 33 Cal.3d 616, 620-621.) We therefore reject Minor's claim.

E.    *The Juvenile Court Did Not Fail to Consider the Consequences of Committing Minor to DJJ.*

There is likewise no merit to Minor's argument that the juvenile court abused its discretion in allegedly failing to consider the lifetime consequences of committing him to DJJ. To begin with, Minor fails to demonstrate that he raised this issue in the juvenile court, and thus we conclude it has been forfeited. (*In re Brian K., supra,* 103 Cal.App.4th at p. 42.) Even if it were not forfeited, it is unavailing. The August 10, 2011 amended petition contains the following language in boldface type: "NOTICE: is hereby given that adjudic[ation] as a ward of the court for this offense and a disposition to the [DJJ] will require you to register pursuant to Section 290 of the Penal Code. Registration is mandatory for life." In its oral ruling at the dispositional hearing, the juvenile court referred specifically to the amended petition, to which it also referred in its written order. Minor's argument is thus flatly contradicted by the record.

In his brief, Minor argues that the consequences of having to register as a sex offender are extremely serious. As he concedes, however, he admitted to having violated Penal Code section 264.1, subdivision (a). In entering this plea, he acknowledged to the court that he understood the consequences thereof. The amended petition gave notice

10

that adjudication as a ward for the offense would require Minor to register as a sex offender.  Minor was aware of those consequences and chose to admit to the offense rather than go to trial.  Having accepted the consequences of his admission, Minor cannot now be heard to complain.

II.     *Minor Has Failed to Show He Received Ineffective Assistance of Counsel.*

Minor argues his trial counsel rendered ineffective assistance by failing to investigate and to present to the juvenile court evidence that a DJJ commitment would not benefit his mental health needs.  He claims that his trial counsel should have investigated the appropriateness of a DJJ commitment given his mental health history and needs and should have sought mitigating evidence about that history.  Minor contends his counsel should have presented this evidence to the juvenile court and advocated for a placement that provided appropriate mental health care.  We reject Minor's claim.

A.      *Standard of Review*

The Sixth Amendment right to effective assistance of counsel extends to minors in juvenile delinquency proceedings.  (*Timothy J. v. Superior Court* (2007) 150 Cal.App.4th 847, 857.)  To demonstrate he received ineffective assistance of counsel, Minor "bears the two-pronged burden of showing that his counsel's representation fell below prevailing professional norms and that he was prejudiced by that deficiency."  (*In re Angel R.* (2008) 163 Cal.App.4th 905, 909, citing *Strickland v. Washington* (1984) 466 U.S. 668, 694.)  To satisfy this burden, "the defendant must show that counsel's performance was deficient in that it 'fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms.'  [Citations.]  If counsel's performance has been shown to be deficient, the defendant is entitled to relief only if it can additionally be established that he or she was prejudiced by counsel's deficient performance. [Citations.]"  (*In re Edward S.* (2009) 173 Cal.App.4th 387, 406-407.)

Defendant's burden is difficult to carry on direct appeal (*People v. Vines* (2011) 51 Cal.4th 830, 876), because the trial record often does not indicate why trial counsel acted or failed to act in the manner she did.  (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-268.)  We may reverse a conviction for ineffective assistance of counsel on

11

direct appeal only if the record affirmatively discloses that counsel had no rational tactical purpose for her act or omission. (*People v. Vines, supra,* 51 Cal.4th at p. 876.) We presume counsel's actions were simply sound trial strategy unless counsel was asked for an explanation and failed to provide it, or if there simply could be no satisfactory explanation for the claimed error. (*In re Angel R., supra,* 163 Cal.App.4th at p. 909.) If "there is a reasonable tactical explanation for trial counsel's action, we *must* reject [Minor's] ineffective assistance of counsel claim." (*Id*. at p. 910.) Finally, "we need not dwell on the question whether defendant can establish deficient performance by his trial counsel" if he cannot establish prejudice, "that is, a reasonable probability of a more favorable outcome in the absence of the assertedly deficient performance." (*People v. Stewart* (2004) 33 Cal.4th 425, 495.)

B. *Minor Has Failed to Show He Was Prejudiced by Trial Counsel's Alleged Errors.*

Minor's claim of ineffective assistance fails because he has not demonstrated he was prejudiced by trial counsel's alleged errors. The sole basis for his claim of prejudice is the contention that his trial counsel was aware of his alleged mental illness and special education needs and thus counsel should have investigated this information so that she could "present mitigation based thereon at disposition." He claims his counsel was aware that referral to a "multidisciplinary team" would have resulted in a recommendation for his placement "in the least restrictive setting consistent with the protection of the public and [his] treatment needs."

To begin with, Minor's trial counsel did indeed argue for a less restrictive placement based on his abusive childhood, and she raised Minor's prior treatment at the Aldea group home, "which deals with kids with mental health issues." Counsel also submitted a letter from a social worker who attested to Minor's "significant progress in addressing his mental health issues and developing healthy coping skills." Furthermore, the dispositional report informed the juvenile court of the fact that Minor had suffered severe abuse as a child, had been placed in special education, and had been prescribed medications for psychological problems. It specifically identified "Emotional Mental

Health Disabilities" as one of Minor's problems. Finally, the juvenile court had before it Dr. Doty's psychological evaluation report.[6] Thus, contrary to Minor's contentions, the juvenile court did receive evidence about his mental health and special education issues.

Moreover, Minor "must establish prejudice as a demonstrable reality, not simply speculation[.]" (*In re Cox* (2003) 30 Cal.4th 974, 1016, quotation marks omitted.) To support his contention that his counsel failed to investigate and present mitigating evidence, Minor would have to put forth either declarations or testimony that would establish the substance of the allegedly omitted evidence and the likelihood it would have led the juvenile court to a different disposition. (See, e.g., *People v. Bolin* (1998) 18 Cal.4th 297, 334 [ineffective assistance claim "'must be supported by declarations or other proffered testimony establishing both the substance of the omitted evidence and its likelihood for exonerating the accused'"].) Here, however, Minor points to no mitigating evidence beyond that which was already before the juvenile court. We therefore conclude he has failed to meet his burden of demonstrating he was prejudiced. (*Ibid.*)

III. *Minor's Claims Regarding Sex Offender Registration and Residency Restrictions Are Either Forfeited, Unripe, or Foreclosed by Binding Precedent.*

Minor asks this court to enjoin enforcement against him of the sex offender registration requirement of Penal Code section 290.008 and the residency restrictions of Penal Code section 3003.5, subdivision (b). He argues the residency restriction does not

---

[6] Minor argues his counsel was incompetent because she did not request that he be evaluated pursuant to section 711, subdivision (a). That subdivision authorizes the juvenile court to refer for evaluation a minor who "may have a serious mental disorder, is seriously emotionally disturbed, or has a developmental disability[.]" In fact, however, the juvenile court did order Dr. Doty to conduct just such a psychological evaluation. Minor does not explain why this evaluation failed to satisfy the statute. Minor contends that he should have been referred to a multidisciplinary team for dispositional review and recommendation, but this is required only for minors whom the court has found to be suffering from a serious emotional disturbance or mental illness. (§ 713, subd. (a).) Dr. Doty found that Minor's "thought processes were sequential and coherent, with no indication noted of psychosis" and that he was "a concrete thinker with an adequate sense of reality testing." From this, the juvenile court could reasonably have concluded Minor did not meet the criteria of section 713, subdivision (a), and Minor does not argue otherwise.

apply to juveniles, and he contends both the registration requirement and residency restrictions must be enjoined because he was entitled to a jury trial on the underlying charges.

Minor does not claim he raised these issues in the juvenile court, and he makes no argument that they are not subject to the ordinary rules of forfeiture. Minor also does not argue that he will definitely be subject to these conditions. Rather, he "[a]ssum[es] that the residency restriction . . . will be applied to him upon his discharge or parole from DJJ[.]" Perhaps as a consequence, the Attorney General argues in her brief that Minor's claims are not ripe for consideration, because the challenged restrictions will not go into effect until Minor is discharged or paroled from DJJ. (See *In re Derrick B.* (2006) 39 Cal.4th 535, 539.) Minor does not respond to this argument in his reply brief, and we may therefore assume he has conceded the point. (See *People v. Hightower* (1996) 41 Cal.App.4th 1108, 1112, fn. 3 [appellant's failure to reassert claim in reply brief led court to "assume that he, as are we, was persuaded by the Attorney General's argument in response . . ."].) Since Minor does not demonstrate that the issues were properly preserved for appeal, and because he does not appear to disagree with the Attorney General that the issues are not ripe for consideration, we will not address the arguments further.

Minor also makes no reply to the Attorney General's argument that controlling California Supreme Court precedent precludes us from holding he is entitled to a jury trial on the underlying charges. We therefore agree that we are bound by our Supreme Court's determination that sex offender registration is not "punishment" (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1196-1197; *In re Alva* (2004) 33 Cal.4th 254, 287-292; *People v. Castellanos* (1999) 21 Cal.4th 785, 792), and similarly, its determination that the residency restrictions do not impose "punishment" for the offense that gives rise to the registration requirement, but rather for conduct that occurs after the commission of, or the conviction for, the registerable offense. (*People v. Picklesimer* (2010) 48 Cal.4th 330, 343-344; *In re E.J.* (2010) 47 Cal.4th 1258, 1280.) Moreover, if either is

14

"punishment," the inquiry becomes whether Minor has a constitutional right to a jury trial. The law at this juncture is that he does not.[7]

III. *The Record Shows the Juvenile Court Exercised its Discretion in Setting the Term of Confinement.*

Finally, Minor contends the juvenile court failed to exercise its discretion in setting his term of confinement based on the facts and circumstances of the case. The basis of this argument appears to be the fact that the court failed to mark the box on the commitment form next to the statement, "The court has considered the individual facts and circumstances of the case in determining the maximum period of confinement." Minor's claim is meritless.

After hearing the arguments of counsel, the juvenile court stated it was imposing the nine-year term because "the information in the reports indicates that this is justified and may be required to effectuate a rehabilitative program for [Minor]." The juvenile court's exercise of its discretion is therefore apparent from the reporter's transcript of the disposition hearing. This suffices to fulfill the court's duty under section 731, subdivision (c). (See *In re Julian R.* (2009) 47 Cal.4th 487, 498-499 [proper exercise of juvenile court's sentencing discretion must be presumed even where record is silent].)

DISPOSITION

The judgment is affirmed.[8]

---

[7] We note that this issue is currently pending before the California Supreme Court in *People v. Moseley,* review granted, January 26, 2011, S187965, *In re J.L.,* review granted March 2, 2011, S189721, and *In re S.W.,* review granted January 26, 2011, S187897.

[8] In a separate petition for writ of habeas corpus, case no. A136034, appellant has raised a number of claims challenging the competency of his trial counsel. We have denied that petition by separate order filed this date.

15

_____

Jones, P.J.


We concur:


_____

Simons, J.


_____

Bruiniers, J.