Filed 5/21/15  In re F.B. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re F.B., a Person Coming Under the Juvenile Court Law. | H040858 (Santa Clara County Super. Ct. No. 313-JV39780 A&B) |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>F.B.,<br><br>Defendant and Appellant. | |

**STATEMENT OF THE CASE**

The Santa Clara County District Attorney filed a juvenile wardship petition alleging that F.B. committed second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c); count 1) and dissuaded a victim from reporting a crime (Pen. Code, § 136.1, subd. (b)(1); count 2).  The petition alleged that F.B. personally used a dangerous and deadly weapon in the commission of the robbery (Pen. Code, §§ 667, 1192.7).  Following a contested jurisdictional hearing, the juvenile court found that F.B. had committed second degree robbery, but it concluded there was insufficient evidence to support the weapon allegation and the charge of dissuading a victim.  At the disposition hearing, the juvenile

court declared F.B. a ward of the court and placed him on probation subject to various terms and conditions.

F.B. now appeals from the judgment of wardship. He makes the following arguments on appeal: 1) there was insufficient evidence identifying him as a perpetrator of the robbery; 2) his trial counsel rendered ineffective assistance in failing to move to suppress a pretrial identification; 3) the juvenile court erred in admitting a computer aided dispatch log (CAD log) into evidence; and 4) the juvenile court erred in admitting evidence suggesting that F.B. was a gang member. As set forth below, we will affirm.

### STATEMENT OF THE FACTS

Around 9:45 p.m. on December 31, 2012, Hugo Valdivia was retrieving items from his truck, which was parked on Lavonne Street in San Jose. Two men approached Valdivia. One of the men "pointed" a baseball bat at Valdivia's head and told Valdivia to hand over everything in his pockets. The second man was "looking around" and "[k]eeping an eye . . . to see if there was somebody else around." Valdivia gave his cell phone and money to the man with the bat. The man with the bat and his companion began to walk away together. The man with the bat turned toward Valdivia, stated it "was their territory," and warned Valdivia "they were going to come back" if Valdivia called the police. The comment scared Valdivia because the two men appeared to be gang members. The two men continued walking away, and Valdivia saw them enter an apartment complex located on King Street near Virginia Street.

At 9:47 p.m., "right after" the robbery occurred, Valdivia called 911 from a friend's cell phone. According to the CAD log, Valdivia informed the 911 dispatcher that one of the robbers wore a white checkered jacket and black pants and the other robber wore a black jacket and white pants. Police spoke with Valdivia on Lavonne Street. A "few minutes" later, police took Valdivia to another location, and Valdivia

2

identified F.B. as one of the men who robbed him. Valdivia and police officers provided differing testimony regarding the identification procedure.

Valdivia testified that police drove him and his wife in a patrol car to the apartment complex on King Street that the robbers had entered. According to Valdivia, he and his wife remained in the back of the patrol car, two officers sat in the front of the patrol car, 18 to 20 officers were present on the street, 20 to 22 suspects were present on the street, approximately half of the suspects were handcuffed, and each suspect was individually placed in front of the patrol car's spotlight. Valdivia testified that, during this procedure, he identified F.B. as the robber who was not holding the bat. Valdivia explained that he recognized F.B.'s face and clothes, and he also explained that he saw the two robbers' faces "very well" during the robbery.

Officer Jarret Jesser testified that he detained F.B. outside of the Pink Elephant, a bakery in the area of King and Virginia Streets, around 10:00 p.m. The Pink Elephant is about one block away from the location where the robbery occurred. Officer Jesser testified that Officer Nader Yasim brought Valdivia to the Pink Elephant parking lot to do a field identification. Officer Jesser described the identification procedure that took place at the Pink Elephant parking lot as follows: F.B. was handcuffed and illuminated by a patrol car spotlight, F.B. was the only suspect presented to Valdivia at the Pink Elephant, and Valdivia made a "positive identification" of F.B. at 10:21 p.m. Officer Yasim described the identification procedure at the Pink Elephant parking lot as follows: Valdivia sat in the back of a patrol car, Valdivia's wife was not present, Officer Yasim admonished Valdivia that F.B. might not be an involved party, and Valdivia "immediately" identified F.B. as "the guy who robbed [him]."

Officer Jesser testified that, at the time of the detention at the Pink Elephant parking lot, F.B. wore a "dark checkered" jacket and "checkered shorts." During the detention, F.B. dropped his jacket onto the ground. An officer searched F.B.'s jacket and

3

found a cell phone inside the jacket. An officer dialed Valdivia's cell phone number, and the cell phone recovered from F.B.'s jacket rang. Valdivia testified that police found his stolen cell phone "on" F.B.

Officer Yasim testified that he took a full statement from Valdivia after the identification at the Pink Elephant parking lot. Officer Yasim testified that, in the full statement, Valdivia stated that F.B. was "the guy with the bat."

In court, Valdivia identified F.B. as the same man he identified on the night of the robbery. When he made the in-court identification of F.B., Valdivia noted that it was a "little difficult . . .to recognize him a hundred percent."

F.B. testified on his own behalf. F.B. explained that he was "hanging out" with friends in the area of King and Virginia Streets on the night of the robbery, and that he purchased a cell phone from a man on the street that night. He testified that he was not present when Valdivia was robbed, and he denied participating in the robbery. On cross-examination, F.B. admitted that he had a tattoo associated with the Sureno gang, and he also admitted a gang member would say "this is our neighborhood."

## DISCUSSION

### I. *Sufficiency of the Evidence*

F.B. contends that we must reverse the judgment of wardship because insufficient evidence identified him as a perpetrator of the robbery. As explained below, we conclude that sufficient evidence identified F.B. as a perpetrator of the robbery.

### A. *Standard of Review*

An appellate court's review of the sufficiency of the evidence in a juvenile delinquency proceeding "is governed by the same principles applicable to adult criminal appeals." (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1328.) Under those principles, the appellate court must " 'determine whether the record contains any substantial evidence tending to support the finding of the trier of fact, and in considering

4

this question [the appellate court] must view this evidence in the light most favorable to the finding.' " (*Ibid.*) "Substantial evidence is evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the appellant guilty beyond a reasonable doubt." (*Ibid.*)

Although a reviewing court "must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends." (*People v. Jones* (1990) 51 Cal.3d 294, 314 (*Jones*).) Thus, "if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." (*Ibid.*)

### B. *Sufficient Evidence Identified F.B. as a Perpetrator of the Robbery*

"Identification of the defendant by a single eyewitness may be sufficient to prove the defendant's identity as the perpetrator of a crime. [Citation.] Moreover, a testifying witness's out-of-court identification is probative for that purpose and can, by itself, be sufficient evidence of the defendant's guilt even if the witness does not confirm it in court." (*People v. Boyer* (2006) 38 Cal.4th 412, 480 (*Boyer* ).) " 'Apropos the question of identity, to entitle a reviewing court to set aside a jury's finding of guilt the evidence of identity must be so weak as to constitute practically no evidence at all.' [Citations.]" (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 521 (*Mohamed*).)

On the night of the robbery, Valdivia identified F.B. as a perpetrator of the robbery. Officer Yasim testified that Valdivia "immediately" identified F.B. as "the guy who robbed [him]," and Valdivia testified that he was able to make the out-of-court identification because he saw F.B.'s face "very well" during the robbery. The out-of-court identification was sufficient to prove F.B.'s identity as a perpetrator of the robbery. (See *Boyer, supra,* 38 Cal.4th at p. 480 [a witness's out-of-court identification can, by

5

itself, constitute sufficient evidence of identity].)  Other evidence, however, bolstered the out-of-court identification and served to identify F.B. as one of the robbers.  Officer Jesser testified that he detained F.B. approximately 15 minutes after the robbery, that the detention occurred close to the location of the robbery, and that F.B. possessed Valdivia's cell phone at the time of the detention.  F.B.'s possession of Valdivia's cell phone minutes after the robbery, combined with his presence near the scene of the robbery, strongly suggested that F.B. was involved in the robbery.  Although F.B. testified that he was merely socializing in the area of the robbery and had purchased the cell phone from a man on the street, the juvenile court expressly found that it "didn't believe [F.B.'s] testimony."  Additionally, Valdivia made an in-court identification of F.B. as a perpetrator of the robbery.  Even though Valdivia testified that it was a "little difficult" for him to be "a hundred percent" certain of the in-court identification, the in-court identification nonetheless demonstrated that F.B. committed the robbery.  (See *Mohamed, supra,* 201 Cal. App. 4th at p. 522 [a witness's "inability to be 100 percent certain" of an identification does "not preclude the existence of sufficient support" for a verdict].)  Thus, based on the aforementioned evidence, we must conclude that substantial evidence identified F.B. as a perpetrator of the robbery.

F.B. contends that the evidence was insufficient because Valdivia identified him during an "impermissibly suggestive show-up procedure."  This argument is not persuasive.  Any suggestiveness in the pretrial identification procedure was a matter affecting the credibility of Valdivia's identification, which was for the trier of fact to resolve.  (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)  The juvenile court here found Valdivia's identification of F.B. to be credible.  We must defer to that finding.  (*Jones, supra,* 51 Cal. 3d at p. 314 [a reviewing court must defer to the trier of fact's credibility determinations].)

F.B. also asserts that the evidence was insufficient because there were discrepancies between Valdivia's description of the robbers' appearances and F.B.'s appearance on the night of the robbery. F.B. emphasizes differences between Valdivia's description of the robbers' clothing and the clothing F.B. was wearing. F.B.'s argument is not convincing. Any discrepancies were matters affecting the weight of the identification evidence and the credibility of the identification testimony, matters that were for the trier of fact to decide. (*Mohamed, supra*, 201 Cal.App.4th at p. 522.) Moreover, we do not believe the evidence was necessarily incompatible. The CAD log indicates that Valdivia described one of the robbers as wearing a checkered jacket, and Officer Jesser testified that F.B. was wearing a checkered jacket at the time of the detention. Thus, contrary to F.B.'s argument, there was some similarity between Valdivia's description of the robbers and F.B.'s appearance on the night of the robbery.

For the foregoing reasons, we conclude that sufficient evidence identified F.B. as a perpetrator of the robbery. We therefore will not reverse the judgment of wardship due to insufficient evidence.

## II. *Ineffective Assistance of Counsel*

F.B. contends that his trial counsel rendered ineffective assistance in failing to seek suppression of Valdivia's pretrial identification. F.B. asserts that the identification procedure utilized by the police was impermissibly suggestive, and that trial counsel should have moved to suppress the pretrial identification under the due process clause. F.B. has failed to establish ineffective assistance of counsel.

"The due process right to effective assistance of counsel extends to minors in juvenile delinquency proceedings." (*In re M.V.* (2014) 225 Cal.App. 4th 1495, 1528.) The minor "bears the two-pronged burden of showing that his counsel's representation fell below prevailing professional norms and that he was prejudiced by that deficiency."

7

(*In re Angel R.* (2008) 163 Cal.App. 4th 905, 909, citing *Strickland v. Washington* (1984) 466 U.S. 668, 694.)

"A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211; see also *People v. Witcraft* (2011) 201 Cal.App.4th 659, 664.) Where the record on appeal "does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation." (*People v. Anderson* (2001) 25 Cal.4th 543, 569.) "In order to prevail on such a claim on direct appeal, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission." (*People v. Ray* (1996) 13 Cal.4th 313, 349.)

Here, F.B. has failed to overcome the presumption that trial counsel's performance was competent. On the record before us, it is impossible to discern what sort of identification procedure was actually employed. Valdivia's testimony regarding the identification procedure was very different from the identification procedure described by Officer Jesser and Officer Yasim; Valdivia testified that he identified F.B. during a procedure in which police showed him and his wife 20 to 22 suspects outside of an apartment complex, and the officers testified that Valdivia identified F.B. at the Pink Elephant Parking lot with no other suspects present and with Valdivia's wife absent. Given the major discrepancies in the testimony regarding the identification procedure, it is apparent that we do not have all facts necessary to determine whether the identification procedure was unlawful and whether counsel was thus ineffective in failing to seek suppression of the pretrial identification. Our Supreme Court has held that an appellate court should not find ineffective assistance of counsel unless all facts relevant to that claim have been developed in the record. (*People v. Mendoza Tello* (1997) 15 Cal.4th

8

264, 267.) Indeed, the Supreme Court has emphasized: "An appellate court should not declare that a police officer acted unlawfully, suppress relevant evidence, set aside a . . . verdict, and brand a defense attorney incompetent unless it can be truly confident all the relevant facts have been developed and the police and prosecution had a full opportunity to defend the admissibility of the evidence." (*Ibid.*) Because the record on appeal does not provide all of the relevant facts, we cannot conclude that trial counsel here rendered ineffective assistance in failing to seek suppression of the pretrial identification. F.B.'s claim is more appropriately litigated in a habeas corpus proceeding. (*Id.* at pp. 266-267.)

### III. *Admission of the CAD Log and Gang Evidence*

F.B. contends that the judgment of wardship must be reversed because the juvenile court prejudicially erred in admitting the CAD log into evidence and in admitting evidence suggesting that he was affiliated with a gang. As explained below, F.B. has failed to show evidentiary error.

### A. *The CAD Log*

During Officer Jesser's testimony, the prosecutor offered into evidence the 60-page CAD log associated with the robbery. The juvenile court admitted the CAD log under Evidence Code section 1271, the business records exception to the hearsay rule. F.B.'s counsel made a hearsay objection, arguing that the CAD log was inadmissible under the business records exception because Officer Jesser was not a "qualified witness" who could "lay the foundation for how CADs work." F.B.'s counsel also made a confrontation clause objection. The juvenile court overruled both objections.

On appeal, F.B. asserts that the CAD log was inadmissible because it "contained multiple levels of hearsay." F.B. did not object on the ground of multiple hearsay in the juvenile court. " 'A judgment will not be reversed on grounds that evidence has been erroneously admitted unless "there appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so *stated as to make clear the*

9

*specific ground of the objection or motion . . . ."* [Citation.]  Specificity is required both to enable the court to make an informed ruling on the motion or objection and to enable the party proffering the evidence to cure the defect in the evidence.'  [Citation.]"  (*People v. Pearson* (2013) 56 Cal.4th 393, 438, italics in original.)  Because F.B. failed to specifically object on the ground of multiple hearsay, he has forfeited his claim on appeal.

### B.  *Evidence of Gang Affiliation*

Over Evidence Code section 352 objections by F.B.'s counsel, the prosecutor cross-examined F.B. regarding gang affiliation.  F.B. admitted a gang member would say "this is our neighborhood."  F.B. also admitted that he had a tattoo associated with the Sureno gang, but he explained that the tattoo was "a mistake" he made when he "was little."  F.B. denied tagging gang-related graffiti, denied advertising himself as a gang member, denied knowing the area of the robbery was a "gang hot spot," and denied any knowledge of gang culture.

F.B. contends that the juvenile court erred in admitting the foregoing evidence of gang affiliation because it was irrelevant and unduly prejudicial.  We find no abuse of discretion in the admission of the evidence.  (See *People v. Vieira* (2005) 35 Cal.4th 264, 292 [an appellate court reviews the admission of evidence for abuse of discretion].)

As F.B. concedes, identity was a "crucial issue" at the jurisdictional hearing.  Given Valdivia's testimony that the robbers appeared to be gang members and made gang-related comments regarding territory, F.B.'s Sureno tattoo and possible gang affiliation were relevant to identify him as one of the robbers. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 [evidence of gang affiliation may be relevant to the issue of identity].)  The evidence of gang affiliation was not so prejudicial that it should have been excluded under Evidence Code section 352; the cross-examination regarding gang affiliation was brief, and F.B. generally denied affiliation with any gang.  (See Evid.

Code, § 352 [evidence should be excluded only if it creates a "substantial danger of undue prejudice"].) We therefore must conclude that the juvenile court did not commit evidentiary error. Even if we were to conclude that the juvenile court erred in admitting the evidence, we would deem the error harmless. In finding that F.B. had committed robbery, the juvenile court specifically stated: "I am not considering any evidence of gang activity at all. I don't even have to get there to do so." Thus, even if the juvenile court had excluded all evidence of gang affiliation, it is not reasonably probable that F.B. would have achieved a more favorable result. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [evidentiary error warrants reversal if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].)

## C. *Cumulative Error*

F.B. finally asserts that the "cumulative effect" of the "improper admission of the CAD log and the gang evidence" warrants reversal. Given our conclusion that there was no evidentiary error, cumulative error does not warrant reversal of the judgment of wardship. (See generally *People v. Kronemyer* (1987) 189 Cal.App.3d 314, 349, disapproved on another point in *People v. Whitmer* (2014) 59 Cal.4th 733 [in assessing a claim of cumulative error, "the litmus test is whether defendant received due process and a fair trial"].)

DISPOSITION

The judgment is affirmed.

11

_____

RUSHING, P.J.


WE CONCUR:




_____

MÁRQUEZ, J.




_____

GROVER, J.